1
2
3
4
5
6
7
8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JEFFREY GERALD JONES,                No. CIV S-97-2167-MCE-CMK

12              Petitioner,              DEATH PENALTY CASE

13        vs.                           <u>AMENDED FINDINGS AND
                                         RECOMMENDATIONS</u>

14   ROBERT L. AYERS, JR.,[1]

15              Respondent.

16   _____/

17              Petitioner, a state prisoner proceeding with appointed counsel, seeks a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is respondent's motion to

19   dismiss (Doc. 68).[2]

20   _____

21         [1]      Pursuant to Federal Rule of Civil Procedure 25(d), Robert L. Ayers, Jr., is
     substituted for his predecessor.  The Clerk of the Court is directed to update the docket to reflect
22   the above caption.

23         [2]      On March 1, 2006, this matter was reassigned to the undersigned.  Following
     reassignment, the court reviewed the objections filed by the parties (Docs. 78, 79, and 80) to
24   findings and recommendations issued by the prior magistrate judge.  It was determined that the
     findings and recommendations should be vacated and that the parties should submit
25   supplemental briefing regarding the applicability of state procedural defaults to petitioner's
     claims.  The parties have submitted the requested supplemental briefs (Docs. 84, 85, 86, and 87)
26   and the court now issues these amended findings and recommendations.

# I. BACKGROUND

The undersigned incorporates the statement of the procedural history of this case as set forth in the original findings and recommendations as follows:

> Petitioner was convicted by a jury and judgment was imposed February 22, 1989.  His opening brief in his automatic appeal was filed September 7, 1994.  Judgment was affirmed March 10, 1997, in People v. Jones, 15 Cal.4th 119 (1997).  In affirming, the court found petitioner had waived some of his claims by failing to object in the trial court.
>
> Petitioner filed a petition for habeas corpus in the California Supreme Court December 6, 1995, and it was denied November 3, 1997.  (citation to record omitted).  Some claims were denied because they could have been, but were not, raised on appeal . . ., or because there were raised and rejected on appeal.  (citations omitted).
>
> Petitioner filed a second petition for habeas corpus in the California Supreme Court December 5, 2000, and it was denied September 24, 2003.  (citation to record omitted).  Some claims were denied as untimely [and/or successive].  (citations omitted).

The instant federal action proceeds on the second amended petition (Doc. 55), filed October 30, 2003.  Respondent filed an answer (Doc. 61) on April 30, 2004.

In his motion to dismiss, respondent argues:  (1) some claims are procedurally barred; (2) some claims are not cognizable; (3) Claim VII is time-barred; (4) Claim XIII is unexhausted; (5) petitioner lacks standing to raise Claim XVII; and (6) Claim XIX is premature.  As to procedural defaults, respondent argues that the following four procedural defaults apply in this case:  (1) the contemporaneous objection rule; (2) the timeliness rule; (3) the waiver (Dixon) rule; and (4) the successive petition rule.

In the original findings and recommendations, the magistrate judge rejected respondent's arguments as to procedural bars resulting from the timeliness default, the waiver default, or successive petition default.  As to the contemporaneous objection rule, however, the court concluded in the original findings and recommendations that Claims II, VIII-B, VIII-C1, VIII-C3, VIII-D, and X should be dismissed as procedurally barred by this default.  The court allowed for the possibility that petitioner could ". . . examine the same issues pursuant to a claim that petitioner's counsel provided ineffective assistance by failing to make those objections at the

2

1  trial."

2  Addressing respondent's remaining arguments, the court also concluded that

3  Claim III should be dismissed as not cognizable, except to the extent petitioner asserts ineffective

4  assistance of counsel.  In the original findings and recommendations, the court stated:

5  Respondent asserts Claim[] III . . . should be dismissed for failure
   to state a federal question.

6  Claim III alleges that petitioner was denied assistance of competent
   experts, the competent assistance of counsel and, consequently, a reliable

7  determination of competency, guilt, sanity and penalty.  Specifically,
   petitioner challenges trial counsel's choice of Dr. Edwards as an expert

8  neuro-psychologist at the competency phase, and decision to abandon all
   issues pertaining to neuro-psychology at subsequent stages.  Petitioner

9  claims a violation of two rights, that of competent expert assistance . . .
   and that of effective assistance of counsel.  (citations omitted).

10  Respondent argues there is no federal constitutional right to the
   assistance of an effective expert.

11  Ake [v. Oklahoma, 470 U.S. 68 (1985)] gives a criminal defendant
   a right of access to a competent psychiatric expert but the state fulfills its

12  duty by giving defendant's counsel funds to engage the expert.  Harris v.
   Vasquez, 949 F.2d 1497 (9th Cir. 1991).  Here, the state satisfied that

13  obligation regardless of whether, in hindsight, the services provided by Dr.
   Edwards proved "competent."  The court will address Claim III through

14  the lens of Strickland [v. Washington, 466 U.S. 668 (1984)] by asking
   whether counsel reasonably relied upon Dr. Edwards' evidence.

15

16  The court found that Claim XIX should be dismissed as premature:

17  Finally, respondent asserts petitioner's Claim XIX, that he is
   incompetent to be executed, is premature because no execution date yet

18  has been set.  See Ford v. Wainwright, 477 U.S. 399 (1986).  This claim
   was raised in petitioner's second state habeas petition and dismissed as

19  premature, and petitioner explains he now raises it in this proceeding to
   preserve his rights under Stewart v. Martinez-Villareal, 523 U.S. 637

20  (1998).  Petitioner concedes the claim is not ripe.  It should be dismissed
   as premature.

21

22  The court otherwise recommended that respondent's motion should be denied.  Specifically, the

23  court concluded in the original findings and recommendations as follows:

24  Respondent contends as to Claim IV-A of the petition that "the
   portion" of the claim citing People v. Wheeler, 22 Cal.3d 258 (1978),

25  should be dismissed as stating a claim of a state law violation only.  Each
   reference to Wheeler in the pleading includes a reference in the same

26  sentence to Batsonv. Kentucky, 476 U.S. 79 (1986).  While citation to

3

Wheeler is unnecessary, this superfluity does not vitiate the pleading.

Respondent also seeks dismissal of Claim IV-C. Petitioner alleges denial of his request for a separate penalty jury violated his right to an impartial jury under the Sixth and Fourteenth Amendments and his right to a reliable determination of capital sentence under the Eighth Amendment. Respondent argues this claim merely asserts evidence of petitioner's anti-social behavior admitted during sanity phase was inadmissible as an aggravating factor in the penalty phase, and federal habeas corpus does not lie to review questions about the admissibility of evidence. See Estelle v. McGuire, 502 U.S. 62 (1991). However, respondent . . . admits such an evidentiary ruling may state a federal claim if it violates petitioner's fundamental right to a fair trial. Respondent's argument fails and dismissal is not warranted.

Claim VII alleges petitioner was denied procedural due process by being deprived of a full and fair hearing of his competency to stand trial because he was mentally absent (Claim I), forcibly medicated (Claim II), and denied effective assistance of counsel at the competency hearing (Claim III). In essence, this is a "cumulative error" claim which this court must consider whether or not it was presented in state court as an independent claim. See e.g. Mack v. Blodgett, 970 F.2d 614 (9th Cir. 1992). "Relation back" is not truly at issue; this claim is not time-barred where component claims were filed timely in state court.

Respondent contends portions of Claim XIII alleging constitutional violations based on incompetency during appellate and state post-conviction proceedings are unexhausted. Respondent admits this court found the claim exhausted in its March 13, 2000, findings and recommendations adopted by the district court June 22, 2000. Respondent has not shown that resolution of the claim will turn on facts that fundamentally alter the claim presented in the California Supreme Court.

Respondent argues, citing only decisions from other circuits, that Claim XVII should be dismissed because petitioner lacks standing to challenge violations of international treaties. The United States Supreme Court's decision in Breard v. Greene, 523 U.S. 371 (1998), recognizing the standing of a criminal defendant but not a foreign government to assert rights under the Vienna Convention, disproved respondent's argument. Dismissal of Claim X[V]II is unwarranted.

In respondent's objections to the original findings and recommendations, respondent only argues that the magistrate judge erred with respect to the applicability of procedural bars resulting from the timeliness default, the waiver default, and the successive petition default. Respondent does not object to any of the other findings and recommendations. In his objections, petitioner only challenges the magistrate judge's conclusion that various claims were barred by the contemporaneous objection default. Petitioner also objects because, to the extent the magistrate judge concluded this procedural bar applied, the original findings and

recommendations contained analysis of cause and prejudice or fundamental miscarriage of justice. Both parties requested the opportunity for further briefing.

Because no party objects to the original findings and recommendations concerning any issue other than procedural default, the court will not revisit those issues. Therefore, for the reasons stated above, the court will recommend in these amended findings and recommendations that Claim III be dismissed except to the extent petitioner alleges ineffective assistance of counsel with respect to a competent expert and that Claim XIX be dismissed as premature. The court will also recommend, for the reasons stated above, that respondent's arguments concerning Claims IV-A, IV-C, VII, XIII, and XVII be rejected. These amended findings and recommendations will discuss procedural defaults only.

Upon review of the original findings and recommendations and objections thereto, the court directed the parties to submit supplemental briefing on the following issues:

1.   Whether, as to each state procedural default, the parties have met their respective burdens pursuant to the burden-shifting framework set out in Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003);

2.   Whether, as to each state procedural default, such default was adequate for defaults occurring between the dates the California Supreme Court decided In re Clark, 5 Cal.4th 750 (1993), and In re Robbins, 18 Cal.4th 770 (1998); and

3.   Whether, as to each state procedural default and assuming it applies, cause and prejudice exists.

## II. PROCEDURAL DEFAULT STANDARDS

Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief relies on a state law ground that is independent of federal law and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989). However, a discretionary state rule is not adequate to bar federal habeas corpus review. See Siripongs v. Calderon, 35 F.3d 1308, 1318 (9th Cir. 1994). Generally, the only state law grounds meeting

these requirements are state procedural rules.  Even if there is an independent and adequate state

ground for the decision, the federal court may still consider the claim if the petitioner can

demonstrate:  (1) cause for the default and actual prejudice resulting from the alleged violation of

federal law, or (2) a fundamental miscarriage of justice.  See Harris, 489 U.S. at 262 (citing

Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).

A state law is independent if it is not interwoven with federal law.  See Michigan

v. Long, 463 U.S. 1032, 1040-41 (1983).  The independence of a state law is measured at the

time the default is imposed by the state court to bar a claim.  See Bennett v. Mueller, 322 F.3d

573, 582 (9th Cir. 2003); see also La Crosse v. Kernan, 244 F.3d 702, 204 (9th Cir. 2001); Park

v. California, 202 F.3d 1146 (9th Cir. 2000) (assessing whether California's waiver default was

independent when the California Supreme Court denied the claim).  A state law is adequate if it

is clear, well-established, and consistently applied.  See Bargas v. Burns, 179 F.3d 1207, 1211

(9th Cir. 1999).  The adequacy of a state default is measured at the time of the petitioner's

purported default.  See Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997).  Thus, the

respective dates for determining the adequacy and independence may not be the same.

The government bears the ultimate burden of establishing adequacy.  See Bennett,

322 F.3d at 581.  However, because the petitioner bears the initial burden of putting a procedural

bar affirmative defense in issue in the case (by asserting specific factual allegations as to

inadequacy, for example), the scope of the state's burden of proof is measured by the specific

assertions put forth by petitioner.  See id. at 586.  The petitioner's burden is de minimus.  See

King v. Lamarque, 464 F.3d 963, 967 (9th Cir. 2006); see also See Webb v. Kernan, 2008 WL

564965 (E.D. Cal. 2008).

When the state court discusses a procedural default but also reaches the merits of

a claim, a denial of the claim cannot be said to have relied on the procedural default.  See

Thomas v. Hubbard, 273 F.3d 1164, 1176 (9th Cir. 2001) (citing Harris, 489 U.S. at 263); see

also Panther v. Hames, 991 F.2d 576, 580 (9th Cir. 1993).  As the Ninth Circuit observed in

Panther, ". . . because the Alaska Court of Appeals considered Panther's claim on the merits . . . so can we." 991 F.2d at 580.  In Thomas, the state court discussed the issue of procedural default but then went on to deny the claim because any error was harmless.  See 273 F.3d at 1176.  The Ninth Circuit held:  "In doing so, the [state] court left the resolution of the procedural default issue uncertain rather than making a clear and express statement that its decision was based on a procedural default."  Id.  Therefore, where the state court discusses both procedural default and the merits, and does not expressly hold that the procedural default is the basis of the denial, the procedural default does not operate to bar federal review.

## III. DISCUSSION

At issue is the applicability of four California procedural defaults.  Respondent argues that the following defaults apply to bar various claims asserted in the second amended petition:  (1) the contemporaneous objection rule; (2) the timeliness rule; (3) the waiver (Dixon) rule; and (4) the successive petition rule.  Specifically, respondent raises the following arguments:

> 1.  Petitioner's claims related to the alleged involuntary administration of his medication during trial [Claim II-A (all subparts)] are procedurally defaulted for failing to object in the trial court;
>
> 2.  Petitioner's attack on the performance of Dr. Edwards [Claim III] . . . is procedurally barred [by the timeliness and successive petition defaults];
>
> 3.  Petitioner's . . . claims of ineffective assistance of counsel [Claims V-A (all subparts) and V-B] are now procedurally barred [by timeliness and successive petition defaults];
>
> 4.  To the extent petitioner's [Claim VI] asserts a separate competency trial claim, it is procedurally barred [by the timeliness, successive petition, and waiver defaults];
>
> 5.  Petitioner's cumulative error claim [Claim VII] is . . . barred [by the timeliness and successive petition defaults];
>
> 6.  Petitioner's claims of prosecutorial misconduct [Claims VIII-A (all subparts) and VIII-C5] . . . are . . . procedurally defaulted [by the timeliness, successive petition, and waiver defaults];

7

7.      Petitioner's claims of prosecutorial misconduct [Claims VIII-B, VIII-C1, VIII-C3, and VIII-D (all subparts)] . . . are . . . procedurally defaulted [by the contemporaneous objection default];

8.      Petitioner's claim of juror misconduct . . . [Claim X] is . . . defaulted [by the contemporaneous objection default]; and

9.      Petitioner's international law claims [Claim XVII (all parts)] are procedurally defaulted [by the timeliness, successive petition, and waiver defaults].

Based on these arguments, respondent asserts that:  (1) Claims II-A[3]  (all subparts), VIII-B, VIII-C1, VIII-C3, VIII-D (all subparts), and X are barred by the contemporaneous objection default; (2) Claims III, V-A (all subparts), V-B, VI, VII, VIII-A (all subparts), VIII-C5, and XVII (all parts) are barred by the timeliness default; (3) Claims VI, VIII-A (all subparts), VIII-C5, and XVII (all parts) are barred by the waiver (Dixon) default; and (4) Claims III, V-A (all subparts), V-B, VI, VII, VIII-A (all subparts), VIII-C5, and XVII (all parts) are barred by the successive petition default.

## A.      Contemporaneous Objection Default

Under California law, ". . . an appellate court will not consider claims of error that could have been – but were not – raised in the trial court."  People v. Vera, 15 Cal.4th 269, 275-76 (1997).  Respondent argues that the following claims, all of which were addressed on direct appeal, are barred because petitioner failed to raise objections at the time of trial:  Claims II-A (all subparts), VIII-B, VIII-C1, VIII-C3, and VIII-D (all subparts), and X.   In opposition to respondent's motion to dismiss, petitioner argues that the contemporaneous objection rule is not adequate to bar federal review.[4]  In particular, petitioner points to state court cases he argues

_____

[3]      The original findings and recommendations indicate that respondent argues that all of Claim II is procedurally barred.  However, upon close review of respondent's motion to dismiss, the court finds that the argument as to Claim II relates only to Claim II-A and its subparts.  Respondent makes no procedural default argument concerning Claim II-B through Claim II-E.

[4]      Petitioner does not raise any arguments concerning the independence of the rule.  Nor can he.  As discussed below, Ninth Circuit cases have held that the rule is independent.

1    indicate the rule is not clear, well-established, or consistently applied.  Petitioner notes that, in

2    People v. Williams, the California Supreme Court stated that whether the appellate court

3    considers claims that are raised for the first time on appeal is a matter of discretion which is not

4    governed by any bright-line rule.  See 17 Cal.4th 148, 161 n.6 (1998).  He also notes Hale v.

5    Morgan, in which the California Supreme Court stated that application of the rule to bar claims is

6    not uniform.  See 22 Cal.2d 388, 394 (1978).

7            Under the burden-shifting framework established in Bennett, once a procedural

8    bar defense is raised, the petitioner bears the initial burden of putting the defense in issue by

9    raising specific arguments.  See 322 F.3d at 586.  The court finds that petitioner has met his

10   initial burden under Bennett by pointing to specific authorities which he argues show that the

11   contemporaneous objection rule is not adequate.  See King, 464 F.3d at 967.  The ultimate

12   burden of establishing adequacy thus shifts to respondent.    The scope of the respondent's

13   burden is defined by the arguments raised by the petitioner.  See Bennett, 322 F.3d at 586.

14           Respondent argues that Ninth Circuit cases have already decided that the

15   contemporaneous objection rule is adequate.  As to adequacy, the court in the original findings

16   and recommendations agreed and stated:

17           California's contemporaneous objection rule is an adequate and
         independent state procedural rule enforceable by federal court's when
18       properly invoked by state courts.  Rich v. Calderon, 187 F.3d 1064, 1066
         (9th Cir. 1988); see also Hines v. Enmoto, 658 F.2d 667, 673 (9th Cir.
19       1981), reversed on other grounds by Ross v. Oklahoma, 487 U.S. 81
         (1988); Van[s]ickel v. White, 166 F.3d 953 (9th Cir. 1997).
20           Petitioner in essence concedes . . . [that the contemporaneous
         objection rule is adequate and independent as applied to his claims] but
21       contends California excepts capital cases.  In People v. Bob, 29 Cal.2d
         321, 328 (1946), the California Supreme Court found that an imperfect
22       hearsay objection, conceded by the state, adequately preserved the issue
         for appeal but also said that by providing for automatic appeal to the
23       supreme court in death penalty cases and enjoining the court to examine
         the record and prepare a written decision "from which it should appear that
24       no miscarriage of justice has resulted" and in view of the fact many capital
         cases are defended by inexperienced appointed counsel, "it would seem
25       appropriate for this court to take a liberal view of the technical rules
         applicable to criminal cases generally . . . and examine the record with the
26       view of determining whether or not in the light of all that transpired at the

                                         9

trial of the case a miscarriage of justice has resulted."

In <u>People v. Frank</u>, 38 Cal.3d 711 (1985), the court reversed a death penalty imposed in part on evidence obtained pursuant to an overly broad warrant. The court acknowledged the trial objection "could have been more specific," then added:

> [W]hile in a noncapital case a claim of erroneous admission of evidence will not be reviewed in the absence of a timely and proper objection . . ., we have long followed a different rule in capital cases. On an appeal from a judgment imposing the penalty of death, a technical insufficiency in the form of an objection will be disregarded and the entire record will be examine[d] to determine if a miscarriage of justice resulted. (<u>People v. Bob</u> (1946) 29 Cal.2d 321, 328 [175 P.2d 12]). The <u>Bob</u> rule is even more relevant today, in light of the recognition by the United States Supreme Court of the fact that death is "profoundly different from all other penalties" (<u>Eddings v. Oklahoma</u> (1982) 455 U.S. 104 [71 L.Ed. 1, 8, 102 S.Ct. 869]) and its repeated holdings that a capital defendant is therefore entitled to enhanced procedural protections against arbitrary infliction of the supreme penalty. Indeed, this court recently cited <u>Bob</u> in support of its promise that in capital cases it will review trial errors even when defense counsel has failed to complain of them on appeal. (<u>People v. Easley</u> (1983) 34 Cal.3d 858, 864 [196 Cal.Rptr. 309, 671 P.2d 813]).

> <u>Id.</u> at 729 n.3.

The court in the prior findings and recommendations noted, however, that the California Supreme Court in <u>Easley</u> invoked the "rule barring attacks on search warrants not raised in the trial court and examined the issue only insofar as it implicated competency of trial counsel." In the prior findings and recommendations, the court concluded:

> Based on the Ninth Circuit's decisions in <u>Rich</u> and <u>Van[s]ickel</u>, I conclude these state court decisions do not establish an exception to California's general rule requiring objection in the trial court. Accordingly, Claims II, VIII-B, VIII-C1, VIII-C3, VIII-D, and X should be dismissed on this ground. That conclusion, however, does not foreclose . . . a claim that petitioner's counsel provided ineffective assistance by failing to make those objections at the trial.

In his objections to the original findings and recommendations and in supplemental briefing, petitioner argues that <u>Rich</u>, <u>Vansickel</u>, and <u>Hines</u> do not support the court's conclusion that the contemporaneous objection rule is adequate and independent. Specifically, petitioner asserts that the rule is not consistently applied because application of the

10

1   rule is subject to an exception for capital cases.  As outlined above, federal courts will not review

2   a habeas petitioner's claims if the state court imposed a procedural default which is adequate and

3   independent.  Adequacy is measured at the time of the petitioner's purported default.  See Fields,

4   125 F.3d at 760.  In this case, the defaults for failing to raise contemporaneous objections at trial

5   would have occurred sometime between commencement of the trial in 1988 and conclusion of

6   the trial in February 1989.

7          Turning first to petitioner's argument that there is an exception under Bob and

8   Frank for capital cases, the court agrees with the conclusion reached in the original findings and

9   recommendations that no such exception applies in this case.  In particular, both Bob and Frank

10   considered application of the rule in capital cases where there had been an imperfect objection

11   raised at the time of trial, not where, as here, the claim is that no objection was made.  In Easley,

12   the California Supreme Court specifically applied the contemporaneous objection rule where no

13   objection had been made.  Therefore, to the extent Bob and Frank create an exception in capital

14   cases for imperfect objections, this case is distinguishable because respondent's assertion of the

15   procedural bar is based on the claim that no objections were made.

16          As to petitioner's objections to the court's reliance on  Rich, Vansickel, and

17   Hines, the court also agrees with the original findings and recommendations that these cases

18   support the general conclusion that the contemporaneous objection rule would be an adequate

19   and independent state procedural default in this case.  In Hines, which was decided by the Ninth

20   Circuit in 1981, the petitioner was convicted in 1976.  See Hines, 658 F.2d at 670.  Thus, the

21   defaults at issue occurred and were imposed prior to the relevant dates in this case.  The Ninth

22   Circuit noted that the state court had invoked the contemporaneous objection rule and remanded

23   to the district court for a cause and prejudice analysis.  See id. at 673-74.  In doing so, the Ninth

24   Circuit necessarily concluded that the procedural bar could apply and, thus, that it was adequate

25   and independent.

26   / / /

In <u>Rich</u>, a capital case arising from a trial in Shasta County, the petitioner's conviction and sentence were affirmed by the California Supreme Court in 1988.  <u>See</u> <u>People v. Rich</u>, 45 Cal.3d 1036 (1988).  Thus, the defaults at issue in that case must have occurred and been imposed prior to the defaults in this case.  The Ninth Circuit refused to address six claims of prosecutorial misconduct because "Rich procedurally defaulted by failing to make contemporaneous objections, and the California court consequently invoked a procedural bar to their consideration, the validity of which Rich has failed to overcome."  <u>Rich</u>, 187 F.3d at 1966. By concluding that these six claims were procedurally barred, the Ninth Circuit necessarily determined that the contemporaneous objection rule was adequate and independent.

Similarly, in the Ninth Circuit's 1997 decision in <u>Vansickel</u>, the court concluded that, while the petitioner had been denied due process, the claim was procedurally barred because the state court imposed a default for failure to raise a contemporaneous objection at the time of trial.  <u>See</u> <u>Vansickel</u>, 166 F.3d at 959.  Thus, as in <u>Rich</u> and <u>Hines</u>, the Ninth Circuit necessarily determined that the contemporaneous objection rule was adequate and independent.  <u>See also</u> <u>Melendez v. Pliler</u>, 288 F.3d 1120, 1125 (9th Cir. 2002) (citing <u>Garrison v. McCarthy</u>, 653 F.2d 374, 377 (9th Cir. 1981), and concluding that the contemporaneous objection rule has been consistently applied by the California courts for over 20 years in cases where no objection had been made at trial).

Based on the foregoing, the court concludes that, as a general matter, California's contemporaneous objection rule is adequate and independent and was so at the times relevant in this case.  Petitioner has not argued or pointed to any authorities to indicate that, over time, the rule became inadequate or intertwined with federal law.  The court turns next to petitioner's specific arguments that, as applied by the California Supreme Court to specific claims raised in this case, the contemporaneous objection rule should not bar federal habeas review.

///

///

As to Claim II-A, petitioner contends that the state court's decision ". . . is wholly ambiguous whether the court was invoking a state rule of procedure, e.g., the contemporaneous objection rule, as a state law grounds for decision, or interpreting <u>Riggins</u> in a manner as to require a trial court objection as an element of the federal constitutional claim."  Petitioner concludes:

> Thus, the [state court's] discussion cannot be treated as a clear and unambiguous invocation of a state rule of procedure adequate to support the judgment denying relief.  (citation omitted).  Nor can it be treated as a ruling independent of the federal constitutional merits in that the state court's view of the merits – i.e., that a motion to discontinue medication is an element of the federal constitutional claim – is manifestly intertwined with the ruling.  (citations omitted).

As to Claim VIII-B, petitioner argues that no procedural default was actually imposed by the state court.  As to Claims VIII-C1,  VIII-C3, and VIII-D, petitioner cites <u>Thomas v. Hubbard</u>, 273 F.3d 1164, 1176 (9th Cir. 2001), and argues that the default was not adequate because the state court's references to contemporaneous objections was not a ". . . clear and express reliance on a state law grounds for decision."  As to Claim X, petitioner asserts that the claim is not the type to which the contemporaneous objection rule applies and, in any event, the state court did not clearly impose a default.

### 1.   Claim II-A

In Claim II-A, petitioner argues that the state violated his constitutional rights by administering antipsychotic medication against his will.  Specifically in Claim II-A1, petitioner argues that he was involuntarily medicated during trial; in Claim II-A2, he argues that administration of medication was not justified; and in Claim II-A3, he argues the medication impaired the defense.[5]  In opposition to respondent's motion to dismiss, petitioner argues that, because the state court addressed the merits of these claims, it is not clear that any procedural

---

[5]   Again, the court notes that respondent's motion to dismiss does not appear to raise any arguments relating to Claim II-B through Claim II-E.  Specifically, at page 10 of his motion, respondent challenges claims asserted at paragraphs 86-123 of the second amended petition.  These paragraphs encompass Claim II-A only.  Claim II-B begins at paragraph 124.

1  default was actually imposed.  In objections to the original findings and recommendations,

2  petitioner adds that it is not clear whether a contemporaneous objection default was imposed

3  because the California Supreme Court's discussion of Claim II was intertwined with its

4  discussion of substantive law.

5          As to Claim II-A, the California Supreme Court began by discussing Riggins v.

6  Nevada, 504 U.S. 127, 130-31 (1992), in which the United States Supreme Court held that the

7  state had violated the defendant's due process rights by involuntarily administering antipsychotic

8  drugs because the state had not established the need for the drugs or the appropriateness of the

9  drugs.  See Jones, 15 Cal.4th at 152.  The California Supreme Court next discussed petitioner's

10  claim as follows:

11          Unlike defense counsel in Riggins . . ., the defense in the present
       case did not move the trial court to suspend administration of defendant's
12      medication, or otherwise assert in the trial court that defendant was being
       medicated against his will.  To the contrary, during selection of the guilt
13      phase jury, defense counsel stated, regarding the administration of
       defendant's medication by jail personnel:  "I recognize the jail is doing the
14      best they can, and, I mean, I will encourage any efforts to improve
       [defendant's] condition, but my belief is the condition he is in right now is
15      probably the best that we have got."  Defendant may not raise, for the first
       time on appeal, the claim that he was denied due process of law because
16      antipsychotic drugs were administered to him to control his schizophrenia
       during the proceedings in the present case.  (citation omitted).

17
       Id. at 152-53.
18

19  The Court then stated:

20          Even if we were to consider the merits of defendant's contention, it
       is clear that the holding in Riggins . . . does not apply in the present case,
21      because defendant did not refuse the medication and was not forced to take
       the antipsychotic drug.  Nothing in the decision in Riggins . . ., or in any
22      other case of which we are aware, suggests that a competent criminal
       defendant's voluntary ingestion of medication that has been provided by
23      the state denies the defendant due process of law.

24          Id. at 153.

25  Petitioner cites Benson v. Terhune, 304 F.3d 874, 881 (9th Cir. 2002), in which the Ninth Circuit

26  commented on the Jones decision, in support of his argument that Jones requires objection from

1  counsel as a substantive element of the constitutional claim.  Specifically, the court in <u>Benson</u>

2  stated:

3         . . . In <u>Jones</u>, the California Supreme Court also suggested that a

       defendant's medication will not be considered involuntary unless the

4         defendant has refused the medication, moved to suspend the medication,

       or otherwise manifested involuntariness.

5

       <u>Id.</u> at 881.

6

7  The Ninth Circuit in <u>Benson</u> concluded that medication becomes involuntary when the defendant

8  has made an affirmative act of refusal.  <u>See</u> <u>id.</u>

9        The court does not agree with petitioner's reading of <u>Jones</u> and <u>Benson</u>.  As the

10  Ninth Circuit recognized in <u>Benson</u>, the California Supreme Court in <u>Jones</u> stated that a

11  substantive requirement for a claim based on involuntary medication was that the defendant

12  affirmatively manifest refusal.  This could be accomplished in one of any number of ways – the

13  defendant's attorney could object; the defendant himself could refuse to take the drugs; or the

14  defendant could "otherwise manifest involuntariness."  <u>Id.</u>  In fact, the California Supreme Court

15  in <u>Jones</u> engaged in a lengthy discussion of the various ways in which petitioner had

16  demonstrated his willingness to take the medications and concluded:  ". . . [I]t appears without

17  contradiction that defendant willingly accepted his medication."  <u>Jones</u>, 15 Cal.4th at 154.

18  Therefore, an objection is merely one way for the defendant to manifest involuntariness.

19        Moreover, the structure of the discussion in <u>Jones</u> clearly indicates that the failure

20  of defense counsel to raise a contemporaneous objection was not considered as part of the merits

21  analysis.  Specifically, the California Supreme Court first discussed failure to object then stated

22  that, even if it were to consider the merits, <u>Riggins</u> would not apply because petitioner did not

23  refuse the medication.  Thus, while an objection may indicate involuntariness, counsel's failure

24  to object was not the basis of the California Supreme Court's merits analysis.  Therefore, the

25  court does not agree with petitioner that the state court failed to clearly impose a procedural

26  default because the procedural issue is intertwined with the substantive issue.

1    However, the court agrees with petitioner's conclusion, but for a different reason.

2  The court finds that the state court did not clearly and expressly impose a procedural default

3  because its decision did not rely on the contemporaneous objection rule to deny petitioner's

4  claim.  It is clear that the California Supreme Court considered the contemporaneous objection

5  rule when it stated:  "Defendant may not raise, for the first time on appeal, the claim that he was

6  denied due process of law because antipsychotic drugs were administered to control his

7  schizophrenia during the proceeding in the present case."  Id. at 152-53.  The state court very

8  pointedly noted that defense counsel made no objections at trial.  See id. at 152.  But, it is also

9  clear that the state court considered the merits of the claim when it stated that Riggins would not

10  apply "[e]ven if we were to consider the merits. . . ."  Id. at 153.  Following this phrase is a

11  lengthy discussion of the merits and, specifically, the evidence of petitioner's willingness to take

12  the drugs in question.  In denying the claim, the California Supreme Court concluded:

13              For all of the foregoing reasons, it does not appear that defendant
       was denied due process of law under the decision in Riggins v. Nevada,
14       supra, 504 U.S. 127.  For those same reasons, we reject as well
       defendant's cursory arguments that his ingestion of antipsychotic drugs
15       denied him his rights, under the Eighth and Fourteenth Amendments to the
       United States Constitution, to an individualized and reliable sentencing
16       determination.

17    Id. at 156.

18    Because the state court's denial of this claim was based on its substantive

19  application of Riggins on the merits, and not on defense counsel's failure to raise a

20  contemporaneous objection at time of trial, the procedural default does not operate to bar federal

21  review.  See Thomas, 273 F.3d at 1176; see also Panther, 991 F.2d at 580.  Respondent's motion

22  to dismiss Claim II-A as procedurally barred should be denied.

23  / / /

24  / / /

25  / / /

26  / / /

16

2.      Claim VIII-B

In Claim VIII-B, petitioner claims the prosecutor committed misconduct by denigrating counsel during the guilt phase closing argument.  Specifically, petitioner claims that, during closing arguments, the prosecutor denigrated defense counsel by essentially accusing him of lying to the jury.  Petitioner argues he complied with the contemporaneous objection rule and that no procedural default was imposed.  Respondent argues that "[t]he state high court rejected on procedural grounds all of Petitioner's claims relating to those comments Petitioner had not objected to at trial."

As to Claim VIII-B, the California Supreme Court provided the following background:

> The prosecutor, in his closing argument referred to defense counsel's argument that the prosecutor had failed to prove a motive for the crimes, stating:  "Now I don't think that Mr. Morris was deliberately trying to mislead you, but, let's face it, folks he wasn't being ultimately candid with you in what the law really does require.  And that is too bad.  It damages his credibility, that comment."  Defense counsel objected that the prosecutor's argument misstated the evidence, and the court stated: "That's not proper argument."  In response to defense counsel's request for "an admonition," the court stated:  "The jury is admonished to disregard any personal comments made by either side" and added the directive, apparently aimed at the prosecutor, to "[s]tick to the facts."

Jones, 15 Cal.4th at 168.

In denying this claim, the state court held:

> It was improper for the prosecutor to accuse opposing counsel of lying to the jury and to state that defense counsel's credibility was damaged because he was not candid with the jury (citation omitted), but the trial court sustained defendant's objections and . . . instructed the jury to disregard the comments.  We assume the jury followed this instruction, and that any prejudice thus was avoided.  (citation omitted).

Id.

The court agrees with petitioner that no procedural default was imposed as to alleged prosecutorial misconduct during the guilt phase closing arguments.  Therefore, respondent's motion to dismiss Claim VIII-B should be denied.

17

3.    Claims VIII-C1 and VIII-C3

In Claims VIII-C1 and VIII-C3, petitioner argues that the prosecutor committed misconduct during the sanity phase closing argument.  In Claim VIII-C1, petitioner asserts that the prosecutor further denigrated counsel.  In Claim VIII-C3, petitioner argues that the prosecutor improperly compared him to Adolf Hitler, Charles Manson, and the "Sacramento Vampire Killer."  As to both claims, petitioner contends that the California Supreme Court only ambiguously referenced a procedural default in its discussion and that none was clearly imposed.  Respondent argues that the contemporaneous objection rule was applied to both claims.

Regarding Claim VIII-C1, the California Supreme Court stated:

> Defendant also contends that the following portions of the prosecutor's argument during the sanity phase constituted misconduct, because they denigrated defense counsel:  "[The Prosecutor]:  I am tired and bored . . . [¶] [Defense counsel] didn't talk about the law an awful lot. He started off by kind of referring you to this definition and he got lost right at the start of his argument, and the reason why, he doesn't understand the law.  He doesn't understand how it works.  And he doesn't understand what it really means.  [¶] Perhaps I can help."
>     A short time later, the prosecutor addressed defense counsel, stating:  "I heard you talking up here for an hour and a half and I sat through two weeks of this trial and the best you have done is prove to me that this guy has some kind of problem."  The prosecutor later added: "[T]here is nowhere in the law of California here that says you have got to have logical reasons in order to be found sane, or, in the alternative, if your reasons are irrational, you are insane.  That is not the law.  It is not in there.  [¶] [Defense counsel] would like it to be.  But it is not.  That's just not the law, and we know why."

Jones, 15 Cal.4th at 175.

The state court denied the claim with the following analysis:

> Defendant did not object to any of these remarks and, accordingly, it is "deemed to have waived the objection and the point cannot be raised on appeal." (citation omitted).  In any event, none of these comments constituted misconduct. . . .  It did not constitute misconduct for the prosecutor to assert that defense counsel's argument reflected a misunderstanding of the relevant law.

Id., 15 Cal.4th at 175.

///

18

1   As to Claim VIII-C3, the California Supreme Court stated:

2           Defendant contends the prosecutor committed misconduct during
    his sanity phase argument by referring to Adolph Hitler, Charles Manson,
3   and Richard Chase (the "Sacramento Vampire Killer").  In attempting to
    make the point that the circumstance that a murder was committed for
4   irrational reasons does not necessarily mean that the perpetrator is not
    guilty by reason of insanity, the prosecutor stated:  "You see a homicide,
5   especially a brutal homicide, and you say normal people don't do that.
    Normal people don't go out and hammer to death three . . . people.  [¶]
6   And that is kind of a given.  And if you look in the context of people who
    have problems who do these type killings, I don't care if you take a Hitler,
7   a Manson, you take a Richard Chase, the Sacramento Vampire Killer, all
    these people have problems and they had goofy and bizarre reasons for
8   doing what they did.  Hitler didn't like Jews. He was obsessed with the
    Jewish race so he planned to exterminate them.  Do you think Mr. Hitler
9   had a problem, undoubtedly so?  Do you think it is an obsession that he
    acted upon a bizarre brutal reason to go out and kill a bunch of people?
10  Yes.  Did he know what he was doing?  You betcha.  [¶] Chase –"  At that
    point, defendant objected, stating, "that doesn't fit this definition.  It is a
11  different test as to what would happen as to Mr. Chase."  The court
    sustained the objection.  The prosecutor made no further reference to
12  Richard Chase, but continued the theme, without objection, with
    references to "these homicides in the paper.  Woman kills her three
13  children.  This guy is in a tower, starts shooting down all these people in
    Texas, and on and on and for reasons that you and I simply do not
14  understand."

15          Id. at 179.

16  The California Supreme Court denied the claim with the following analysis:

17          Defendant's sole objection was to the reference to Richard Chase.
    That objection was sustained, and defendant did not ask that the jury be
18  admonished to disregard the previous reference to Chase.  Accordingly,
    defendant may not argue on appeal that the prosecutor's references to
19  Hitler, Manson, and Chase constituted reversible error.  (citation omitted).
            In any event, the prosecutor's references to notorious murderers did
20  not constitute misconduct.  It was proper for the prosecutor to use as
    examples notorious murderers who committed heinous crimes for
21  irrational purposes but apparently were legally sane.  The prosecutor did
    not suggest that the offenses charged against defendant were as heinous as
22  those committed by Hitler, Manson, and Chase.  (citation omitted). . . .  In
    the present case, it was proper for the prosecutor to use these well-known
23  examples of irrational murders to illustrate his point regarding the limits of
    the defense of insanity.

24          Id. at 179-80.

25

26  ///

19

1    Citing to Thomas v. Hubbard, petitioner argues that the claims are not

2  procedurally barred because the California Supreme Court did not clearly and expressly rely on

3  counsel's failure to object at time of trial to deny the claims.  The court agrees.  As with Claim II-

4  A, discussed above, the state court mentioned the lack of contemporaneous objections but went

5  on to discuss the merits of the claims.  At best, the state court's denial is based on both the

6  procedural default and the merits.  It cannot be said, however, that the state court relied on the

7  procedural default to deny the claims.  Therefore, any procedural default cannot operate to bar

8  federal review.  See Thomas, 273 F.3d at 1176; see also Panther, 991 F.2d at 580.  Respondent's

9  motion to dismiss Claims VIII-C1 and VIIII-C3 as procedurally barred should be denied.

10                    4.    Claim VIII-D

11    In Claim VIII-D, petitioner asserts 13 instances of prosecutorial misconduct

12  during the penal phase trial.  According to respondent, the California Supreme Court rejected all

13  these claims on direct appeal due to defense counsel's failure to raise objections at the time of

14  trial.  Petitioner argues in his opposition to respondent's motion to dismiss that any procedural

15  default should not bar federal habeas review because the defaults occurred as the result of

16  ineffective assistance of counsel.  In objections to the original findings and recommendations,

17  petitioner cites to Thomas and adds that there is no clear and express reliance by the California

18  Supreme Court on a procedural default to deny the claims.

19    The California Supreme Court began its analysis of this claim by discussing

20  defense counsel's failure to interpose objections or seek appropriate admonitions.  See Jones, 15

21  Cal.4th at 181.  The state court rejected petitioner's argument that the contemporaneous

22  objection requirement should not apply where a miscarriage of justice would result.  See id.

23  However, this was not the end of the state court's analysis.  In particular, the court looked past

24  the lack of contemporaneous objections and nonetheless addressed the merits of petitioner's

25  claims by stating:  "Even if defendant had preserved the issue of prosecutorial misconduct by

26  interposing timely objections, his claims of misconduct lack merit. . . ."  Id. at 182.  The

1  California Supreme Court then engaged in a lengthy substantive analysis of each of the claimed

2  instances of misconduct and, as to each, concluded that the prosecutor's argument was proper.

3  See id. at 182-89.

4          As with Claims II-A, VIII-C1, and VIII-C3, the court cannot conclude the state

5  court necessarily relied on the procedural default to deny the claims.  To the contrary, it is clear

6  that the state court relied on its substantive analysis to deny the claims.  Therefore, petitioner's

7  procedural default cannot operate to bar federal review.   See Thomas, 273 F.3d at 1176; see also

8  Panther, 991 F.2d at 580.  Respondent's motion to dismiss Claim VIII-D as procedurally barred

9  should be denied.

10         5.      Claim X

11         In Claim X, petitioner asserts juror misconduct.  Specifically, in the second

12  amended petition, petitioner alleges:

13              One or more jurors at Mr. Jones's trial committed misconduct by
                consulting outside reference materials or relying on purported personal
14              authority to resolve disputed factual issues in the case.  As a result, the
                verdicts in his case are tainted by consideration of extraneous evidence.
15

16  Petitioner states that, when trial counsel learned after the jury had returned the verdict of the

17  possibility that this misconduct had occurred, he made an offer of proof in support of his request

18  to present the testimony of juror Chamness.  In particular, counsel argued:  (1) he learned from

19  his investigator's interview of another juror that juror Chamness had consulted a medical text;

20  (2) Chamness declined to be interviewed by petitioner's investigator; and (3) after being served

21  with a subpoena, Chamness called counsel's office and admitted that she had "looked something

22  up" in a medical text.  The trial court denied the motion for Chamness to testify.  Respondent

23  argues the claim should be dismissed because counsel failed to make objections at trial.

24  Petitioner argues in his opposition and objections to the original findings and recommendations

25  that, because there was nothing that could have been done by the trial court to cure the problem

26  short of setting aside the verdict, the default is not applicable.  Petitioner also argues that the state

court did not actually rely on any default to deny the claim.

As to Claim X, the California Supreme Court stated:

> Defendant contends the trial court abused its discretion in denying his request, immediately prior to sentencing, to call a juror to the witness stand to examine her concerning a possible instance of juror misconduct. As explained below, the trial court did not abuse its discretion.

Jones, 15 Cal.4th at 194.

The state court then discussed the standard set forth in People v. Hedgecock, 51 Cal.3d 395 (1990), and concluded that petitioner failed to meet that standard.  While respondent states in his motion to dismiss that the state court ". . . rejected the claim for failing to properly raise the issue in the trial court and on the merits," the California Supreme Court never discussed the contemporaneous objection rule or otherwise cited a procedural default as a reason to deny the claim.  Rather, the state court decided the issue solely on the merits.

It may be that respondent is basing his argument for dismissal on the state court's observation that defense counsel did not raise the issue in the context of a motion for a new trial, as was the case in Hedgecock.  See Jones, 15 Cal.4th at 195.  However, that language appears to be more a discussion of how petitioner's case is different from Hedgecock, and less a discussion of a procedural default.  Further, assuming the California Supreme Court was referencing a procedural default, it nonetheless concluded on the merits that petitioner would not have been able to prevail even if he raised the issue in the context of a motion for a new trial.  See id. Because the state court addressed the merits, no procedural bar applies.  See Thomas, 273 F.3d at 1176; see also Panther, 991 F.2d at 580.

For the reasons discussed above – either because no default was imposed, or because the state court imposed a default but nonetheless denied on the merits – Claim X should not be dismissed as procedurally barred.

///

///

22

**B.** **Timeliness Default**

Respondent argues that the following claims are barred because petitioner did not raise them in a timely state habeas petition: Claims III, V-A (all subparts), V-B, VI, VII, VIII-A (all subparts), VIII-C5, and XVII (all parts). In the original findings and recommendations, the court addressed the independence of the timeliness default as follows:

> Respondent asserts some claims are barred by California's requirement that habeas claims be timely presented. Pursuant to policies adopted by the California Supreme Court in June 1989, a habeas petition was presumed timely if filed within 90 days after a petitioner's reply brief on direct appeal was due. See In re Robbins, 18 Cal.4th 770, 780 (1998). If not entitled to this presumption, a petitioner had to demonstrate timeliness by establishing absence of substantial delay, good cause for delay, or an exception. Id. Because there was an exception for error of federal constitutional magnitude, this rule was not independent and was ineffective to bar federal review until the Robbins decision August 3, 1998, when the California Supreme Court disentangled its timeliness rule from any consideration of federal constitutional law. Bennett v. Mueller, 322 F.3d 573, 581 (9th Cir. 2003). . . .

This statement of law is not disputed. As to independence of the timeliness rule, the prior magistrate judge concluded:

> . . .Robbins was decided before the California Supreme Court imposed the procedural bar on petitioner in 2000.[6] Petitioner's attempt to distinguish Bennett upon the ground it was not a capital case is unpersuasive insofar as it concerns the independence of the rule.

Because the prior magistrate judge correctly determined independence as of the date the default was imposed, see Bennett, 322 F.3d at 582, and because the timeliness rule was considered independent after 1998, see id. at 581, the court agrees with the conclusion reached in the

---

[6] There is some inconsistency in the original findings and recommendations with respect to the date the timeliness default was imposed when the second state habeas petition was denied. At page 2 of the original findings and recommendations, the prior magistrate judge indicates that the second state habeas petition was denied on September 24, 2003. However, at page 3, he indicates that the timeliness default was imposed in 2000, suggesting that this was the year in which the second state habeas petition was denied. Because Robbins – which is the basis for the finding that the timeliness default was independent when it was imposed – was decided in 1998, this inconsistency makes no difference. Moreover, the parties do not dispute that the timeliness default was independent when it was imposed in this case.

original findings and recommendations that the timeliness defaults imposed in this case were independent. Thus, the only issue in dispute is adequacy.

As to adequacy, the prior magistrate judge stated:

> To assert the bar here, respondent also must sustain a burden of establishing that California's timeliness rule is adequate. Bennett, 322 F.3d at 585-86 (burden of proving adequacy of a state bar lies with the state). Unlike the "independence" determination, adequacy is assessed at the time the actual default occurred. The California Supreme Court did not state when petitioner defaulted the court's timeliness rule but, necessarily, it was some time between December 6, 1995, when he filed his first petition (that was not found untimely) and December 5, 2000, when he filed his second petition (that was found untimely). As most of this period of delay occurred before the Robbins decision, in light of the state court's omission to specify when the default occurred, it is not possible for respondent to satisfy its burden.

Based on this analysis, the prior magistrate judge concluded that the timeliness default did not operate to bar federal review of any claims. In his objections to the original findings and recommendations, respondent argues:

> As for California's untimeliness rule, the California Supreme Court reaffirmed its viability in In re Clark, a 1993 decision. (citation omitted). Since then, the state high court has, at every opportunity, repeated its commitment to regular and consistent application of the untimeliness rule. See e.g. In re Sanders, 21 Cal.4th 697 (1999); In re Gallego, 18 Cal.4th 825 (1998); In re Robbins, 18 Cal.4th 770 (1998).
> Even so, the magistrate judge concluded that Respondent could not meet its burden of demonstrating the adequacy of the untimeliness rule. In so concluding, the magistrate judge reasoned that Petitioner's second state habeas petition necessarily became untimely sometime between the filing of his first state habeas petition (December 6, 1995), and his second state habeas petition (December 5, 2000). Respondent does not dispute this finding. . . . It is the magistrate's use of In re Robbins as the cutoff date for determining adequacy that improperly and prematurely results in the termination of his analysis.

Respondent contends that the court must determine: (1) whether petitioner has successfully placed the issue of the adequacy of timeliness default issued after 1993 in issue; and (2) if so, whether respondent has successfully demonstrated adequacy with respect to the timeliness defaults when they occurred in this case. The parties discussed these two issues at length in their supplemental briefs.

1    For a state procedural default to be adequate to bar federal review, it must be

2 clear, well-established, and consistently applied as of the date the default occurs.  See Bargas,

3 179 F.3d at 1211; see also Fields, 125 F.3d at 760.  Because the state court did not specify when

4 the second petition should have been filed, it did not say when it became late.  The parties do not

5 dispute the original finding that the second petition became late ". . . some time between

6 December 6, 1995, when [petitioner] filed his first petition (that was not found untimely) and

7 December 5, 2000, when he filed his second petition (that was found untimely)."  When it

8 imposed the timeliness defaults, the state court only indicated that certain claims were deemed

9 untimely.  There was no reason for the state court to determine when, hypothetically, the petition

10 would have been considered timely.  Therefore, as the court observed in the original findings and

11 recommendations, the state court did not specify exactly when petitioner's second habeas petition

12 became late.  While, as the parties agree, the Ninth Circuit has concluded that timeliness defaults

13 imposed after the 1998 Robbins decision are independent, it has not addressed whether such

14 defaults occurring after the 1993 Clark decision are adequate.  Thus, as respondent argues, the

15 issue as to adequacy is whether the timeliness default was adequate after 1993.  More precisely,

16 the issue is whether the default was adequate between the times relevant in this case – December

17 6, 1995, and December 5, 2000.

18    Under Bennett, once a procedural default defense is raised, the petitioner bears the

19 initial burden of putting the defense in issue.  See 322 F.3d at 586.  If this is accomplished, the

20 scope of the respondent's ultimate burden of establishing the defense is measured by the specific

21 assertions put forth by the petitioner.  See id. at 586.  A petitioner may satisfy his initial burden

22 by "asserting specific factual allegations that demonstrate the inadequacy of the state procedure,

23 including citation to authority demonstrating inconsistent application of the rule." Id. at 586.  The

24 initial burden is quite modest and the petitioner is not required to prove anything.  See King, 464

25 F.3d at 967; see also See Webb, 2008 WL 564965; Vaughn v. Adams, 2006 WL1439400, *4

26 (E.D. Cal. 2006) (citing Dennis v. Brown, 361 F. Supp. 2d 1124, 1130 (N.D. Cal.)).

1          In this case, petitioner has consistently argued that the timeliness default was not

2   adequate at the time the default occurred in this case.  His opposition to respondent's motion to

3   dismiss is almost entirely devoted to the question.  In his opposition, petitioner cites the Ninth

4   Circuit's decision in Morales v. Calderon, 85 F.3d 1387 (9th Cir. 1996), and argues that ". . . the

5   California Supreme Court's refusal to explain the reasons for its decisions . . ." makes it

6   impossible to tell whether it has randomly applied the exceptions to the timeliness rule.

7   According to petitioner, the state court's decisions in the cases cited by respondent (Clark,

8   Sanders, Gallego, and Robbins)  ". . . perpetuated, and even exacerbated, the uncertainty problem

9   by adding new – and equally ill-defined – analytical twists and turns without specifying what

10  standards govern navigation of the old ones."  Petitioner adds that ". . . neither Clark, nor

11  Robbins, nor any other case has done anything to rectify the facial inadequacy of the [California]

12  habeas policies' failure to provide any reasonably objective guidelines governing delayed

13  petitions. . . ."   Thus, according to petitioner, the timeliness default was inadequate, even after

14  Robbins was decided.

15         To further support his position, petitioner attaches to his opposition a list of 94

16  California cases where timeliness was decided after Robbins and asserts the list demonstrates

17  that the timeliness rule is not consistently applied.  As to these cases, petitioner argues:

18              These 94 cases reveal nothing like the pattern that would be
            expected in an evenhanded system designed to accomplish [the default's]
19          stated goals.  Bearing in mind that all of the cases studied involve filings
            that occurred more than two years after the presumptive due date (and range
20          almost to 19 years past the presumptive due date), one would expect to see
            a very high rate of petitions denied as untimely.  Yet this is not the case.  Of
21          the 94 petitions, 29 (31%) were deemed timely as to all claims presented,
            49 (52%) were deemed timely as to one or more of the claims presented
22          (i.e., they received a denial that was "mixed" as to timeliness), and only 16
            (17%) were deemed untimely as to all claims presented.  In other words,
23          almost one-third of the cases had no timeliness problem at all.

24  Virtually the same argument was made in Ayala v. Ayers, 2007 WL 2853934 (S.D. Cal. 2007), in

25  which the court concluded that the petitioner had met his initial burden under Bennett of putting

26  the adequacy of the timeliness default in issue.  See id. at *6.

As in <u>Ayala</u>, the court finds that petitioner has met his initial burden under <u>Bennett</u>.  <u>See</u> 322 F.3d at 581, 586.  In particular, petitioner has alleged specific facts – the holdings in 94 state court cases – which he contends demonstrates the inadequacy of the procedural default at issue.  <u>See also King</u>, 464 F.3d at 967 (holding that petitioner is not required to allege specific facts to challenge the adequacy of a state procedural default which has been deemed inadequate).  This conclusion is consistent with the district court's analysis in <u>Dennis v. Brown</u>.  In <u>Dennis</u>, the district court considered the adequacy of a timeliness default occurring sometime between August 1996 and August 2001.  <u>See</u> 361 F. Supp. 2d at 1125.  The court found that the petitioner had met his burden under <u>Bennett</u>.  <u>See id.</u> at 1130.  Specifically, the court noted:

> Petitioner has directed the Court's attention to approximately 200 capital habeas cases decided by the California Supreme Court in which purported procedural defaults occurred or arguably could have occurred as far back as 1980 and potentially as recently as 2003.  Virtually all were resolved by postcard denials. (footnote omitted).  Petitioner alleges that the California Supreme Court was inconsistent in barring claims in these petitions as untimely . . . as demonstrated by the fact that one or more procedural bars was applied to some claims and not to others.  By asserting inadequacy with specific factual allegations, Petitioner has placed Respondent's defense of procedural default at issue.  (citation to <u>Bennett</u> omitted).

<u>Id.</u> at 1130-31..

The court in <u>Dennis</u> distinguished <u>Dossman v. Newland</u>, 2004 WL 302335 (E.D. Cal. 2004), in which the district court had concluded that the timeliness default was adequate, because that was not a capital case.  <u>See id.</u> at 1131.  The court specifically noted: "This is so because 'California's rules governing timeliness in capital cases differ from those governing noncapital cases.'"  <u>Id.</u> (quoting <u>Bennett</u>, 322 F.3d at 583).  The court in <u>Dennis</u> also felt that <u>Dossman</u> had overstated the petitioner's burden under <u>Bennett</u>.  <u>See id.</u>   In any event, this court notes that the judgment in <u>Dossman</u> was vacated by the Ninth Circuit in an unpublished disposition.  <u>See</u> 216 Fed. Appx. 698 (9th Cir. 2007).

/ / /

1        Because petitioner has met his initial burden, the burden shifts to respondent to

2   prove the adequacy of the timeliness default for defaults occurring between December 1995 and

3   December 2000.  See Bennett, 322 F.3d at 586.  In his motion to dismiss, respondent argues that

4   the California Supreme Court "reaffirmed" the timeliness default in Clark and ". . . has, at every

5   opportunity, repeated its commitment to regular and consistent application of the untimeliness

6   rule."  Respondent cites Sanders, Gallego, and Robbins in support of this argument.  As to

7   petitioner's list of 94 cases, respondent discusses the details of a sampling of those cases and

8   argues:

9               What emerges from this sampling is a clear indication that when a
           petitioner offers nothing to justify delay other than conclusory allegations
10          of ineffective assistance of prior counsel, the delay will not be excused. . . .
           Generalized allegations will not excuse delay, but certain of the recognized
11          exceptions will operate to save some claims and not others . . ., and the
           California Supreme Court recognizes that certain claims in an otherwise
12          untimely petition could not have arisen until after the presumptively timely
           date. . . .  On the other hand, particularized justifications for delay and
13          explanations of the efforts expended in the investigation of claims will
           generally be accepted as excusing delay. . . .

14

15        Before addressing whether respondent has met his ultimate burden of proof, it is

16  worth commenting on the background of the timeliness default.  In 1993, the California Supreme

17  Court decided Clark, outlining the various procedural rules applicable to post-conviction

18  proceedings in California.  See 5 Cal.4th 750.  The Court stated that it was "appropriate to review

19  the decisional and statutory law governing collateral attacks on judgments of conviction by

20  petition for writ of habeas corpus."  Id. at 763.  As to "when departure from those rules is

21  warranted," the Court stated that "no clear guidelines have emerged in our past cases. . . ."  Id.

22  Addressing the timeliness rule, the California Supreme Court stated:  "It has long been required

23  that a petitioner explain and justify any significant delay in seeking habeas corpus relief."  Id. at

24  765, 783 (citing In re Swain, 34 Cal.2d 300, 302 (1949)).  The Court observed that delay is

25  measured from the time the petitioner becomes aware of a claim.  See id. at 765 n.4 (citing In re

26  Saunders, 2 Cal.3d 1033, 1040 (1970)).  The Court also stated that a habeas petition should be

1   filed "as promptly as the circumstances allow" and that substantial delay must be justified by a

2   particularized showing.  Id. (citing In re Stankewitz, 40 Cal.3d 391, 397 n.1 (1985)).  In

3   concluding that Clark had failed to establish the absence of substantial delay, the Court noted that

4   ". . . petitioner does not allege with specificity when he became aware of the factual and legal

5   bases for the claims he now raises."  Id. at 786.

6          The Court left open a "fundamental miscarriage of justice" exception to the

7   imposition of the timeliness rule and added that, in capital cases, such an exception is justified if:

8   (1) the claimed constitutional error led to a trial that was "so fundamentally unfair that absent the

9   error no reasonable judge or jury would have convicted the petitioner"; (2) the petitioner is

10  actually innocent; (3) the death penalty was imposed by a grossly misled sentencing authority; or

11  (4) the petitioner was convicted under an invalid statute.  See id. at 797-98.

12         In 1998, the California Supreme Court re-visited the timeliness rule in Gallego.  In

13  Gallego, the Court stated that, in order to avoid the bar on untimely petitions, the petitioner has

14  the burden of showing:  (1) absence of substantial delay; (2) good cause for the delay; or (3) an

15  exception is warranted.  See 18 Cal.4th at 831 (citing Clark, 5 Cal.4th at 782-84).  The Court

16  repeated what it had said in Clark that substantial delay is measured from the time the petitioner

17  knew, or reasonably should have known, of the information offered in support of a claim.  See id.

18  at 832.  In concluding that Gallego had not established the absence of substantial delay, the Court

19  stated that ". . . petitioner has not alleged with specificity facts showing when he obtained the

20  information offered in support of [his claim]."  Id. at 838.

21         The California Supreme Court issued its opinion in Robbins the same day as its

22  opinion in the companion case, Gallego.  The Court stated that it had issued an order to show

23  cause in Robbins and Gallego ". . . to address the question of the timeliness of claims advanced

24  in [capital habeas petitions]."  18 Cal.4th at 779.  The Court repeated the standard for timeliness

25  set forth in Clark.  See id. at 784.  As to the exception for claims involving error of constitutional

26  magnitude, the Court in Robbins disentangled the state standard from federal law for purposes of

independence of the timeliness default.  <u>See</u> <u>id.</u> at 811; <u>see also</u> <u>Bennett</u>, 322 F.3d at 581.  The

Court ultimately concluded that petitioner had established that three subclaims were not

substantially delayed, but that a fourth was barred.  <u>See</u> <u>Robbins</u>, 18 Cal.4th at 779.

In 1999, the California Supreme Court decided <u>Sanders</u>, stating that it "insist[s]

that a litigant mounting a collateral challenge to a final criminal judgment do so in a timely

fashion."  <u>See</u> 21 Cal.4th at 703.  The Court summarized the timeliness rules for capital cases as

follows:

> . . . In capital cases, a habeas corpus petitioner bears the burden of
> establishing the timeliness of his or her petition, which timeliness can be
> shown in one of four ways (in descending order):  (I) the petition is
> presumptively timely, having been filed within ninety days of the filing of
> the reply brief on appeal; (ii) even if not presumptively timely, the petition
> was filed without substantial delay; (iii) even if the petition was filed after
> a substantial delay, good cause justifies the delay; or (iv) even if the
> petition was filed after a substantial delay without good cause, the petition
> comes within one of the four <u>Clark</u> exceptions.

<u>Id.</u> at 704-05.

The Ninth Circuit addressed California's timeliness bar in <u>Morales</u>.  The

petitioner raised two arguments in that case:  (1) the California Supreme Court's habeas

timeliness rules are facially indeterminate; and (2) the timeliness rule is not applied even-

handedly.  <u>See</u> 85 F.3d at 1389-90.  As to the state of the timeliness rule before the 1993 <u>Clark</u>

decision, the court held:

> We find so much variation in application of California's timeliness
> requirements before <u>Clark</u> that we conclude that no discernible clear rule
> then existed for petitions filed more than 90 days after the due date of the
> reply brief on direct appeal.

<u>Id.</u> at 1391.

The Ninth Circuit also concluded that, prior to <u>Clark</u>, the timeliness rule had been applied "only

randomly."  <u>Id.</u>  The court in <u>Morales</u> concluded that "California's rule on timeliness was not

'clear, consistently applied, and well-established' at any time after Morales's convictions were

affirmed and before he filed his first state habeas petition."  <u>Id.</u> (quoting <u>Wells v. Maass</u>, 28 F.3d

1005, 1010 (9th Cir. 1994)).  According to the factual background recited in the Ninth Circuit's

decision, Morales' convictions were affirmed on April 6, 1989, and his first state habeas petition

was filed on July 20, 1992.  See id. at 1388.  As to defaults occurring after 1992, the court stated:

> . . . Clark [decided in 1993] was an attempt to clear up . . .
> uncertainties.  We need express no opinion on whether the attempt
> succeeded, so that timeliness [defaults] invoked post-Clark would
> constitute an adequate . . . state ground of decision; Morales's petition was
> denied before Clark.

Id. at 1391.

Because Morales expressly declined to address post-1993 defaults, the holding has

no direct bearing on the time frame relevant here – 1995 to 2000.  However, the court in Morales

expressed concerns about the pre-Clark timeliness rules that are instructive in determining the

adequacy of post-1993 timeliness defaults.  First, the court noted that a state procedural rule is

not adequate unless it is strictly or regularly followed.  See id. at 1392 (citing Hawthorn v.

Lovorn, 457 U.S. 255, 262-63 (1982)).  Next, the court observed that procedural rules calling for

the exercise of judicial discretion can be considered consistently applied only if discretion is

exercised ". . . according to standards that, at least over time, can become known and understood

within reasonable limits."  Id. (citing Wells 28 F.3d at 1010).  The court then indicated that

denials of habeas petitions as untimely without any analysis render it difficult to discern an

"apparent relationship between the time of delay and the findings concerning timeliness."  Id.

In the original findings and recommendations, the court concluded that it was

impossible for respondent to meet his burden of establishing adequacy over the relevant time

period.  In his objections, respondent notes that the Ninth Circuit has not addressed whether

defaults occurring after 1993 are adequate, and argues that this court must do so.  Therefore,

because petitioner's default occurred after 1993, this court will do what the Ninth Circuit in

Morales did not do – consider whether post-Clark timeliness defaults are adequate.

/ / /

/ / /

1    Once again, the court finds that the district court's decision in <u>Dennis</u> is

2  instructive.  In that case, the district court concluded that the respondent had not met the ultimate

3  burden of proving adequacy.  <u>See Dennis</u>, 361 F. Supp. 2d at 1135.  The court first noted that

4  "[t]he issue of whether the untimeliness bar is adequate is somewhat more difficult . . . [because]

5  the Court has no way of knowing when between August 8, 1996, and August 3, 2001,

6  Petitioner's purported default of claims as untimely occurred." <u>Id.</u> at 1133.  Next, the court noted

7  that the California Supreme Court's decisions in <u>Clark</u>, <u>Gallego</u>, <u>Robbins</u>, and <u>Sanders</u> "strongly

8  suggest that the court may not have applied the untimeliness bar consistently." <u>Id.</u>  As to this

9  point, the court noted:

10                 . . . In the years since <u>Clark</u>, that court has explained its practice
          with respect to only six claims in three petitions apart from the claims in
11         the <u>Sanders</u> petition.  However, during the same time period it has
          determined whether multiple claims in hundreds of other capital habeas
12         petitions were untimely.

13             <u>Id.</u>

14  The court also noted the Ninth Circuit's statement in <u>Morales</u> that:

15         The California Supreme Court's denials of habeas petitions . . . were
          accomplished by brief minute entries in what has been described as 'post-
16         card denial[s].'  We can discern no apparent relationship between the time
          of delay and the findings concerning timeliness. . . .

17             <u>Id.</u> (citing <u>Morales</u>, 85 F.3d at 1392).

18

19  While the <u>Dennis</u> court did not impose any obligation on the state court to issue reasoned

20  decisions in every case, it concluded that, as long as the state court uses post-card denials, "the

21  underpinnings of the determinations reflected in such denials cannot be ascertained with any

22  certainty. . . ." <u>Id.</u> at 1135.

23    The court agrees with the analysis in <u>Dennis</u> and finds that, in the instant case,

24  respondent has not (and probably cannot as long as the state relies on post-card denials) meet his

25  ultimate burden of proof of adequacy of the timeliness default.  As the courts in <u>Dennis</u> and

26  <u>Morales</u> noted, the timeliness bar is most often imposed by the state court without any analysis

1   whatsoever.  This makes it impossible to determine whether the timeliness bar is being imposed

2   consistently.  As the California Supreme Court has made clear in Clark and the cases decided

3   since Clark, imposition of the timeliness default is a question of judicial discretion and is subject

4   to numerous exceptions in capital cases.  For example, the state court must exercise its discretion

5   in deciding whether the habeas petition has been filed "as promptly as the circumstances allow."

6   See Clark, 5 Cal.4th at 765.  The issue is further complicated in capital cases where, as noted by

7   the California Supreme Court in Sanders, timeliness can be established in any one of four ways,

8   one of which involves a showing of good cause and another of which involves consideration of

9   the "fundamental miscarriage of justice" exceptions outlined in Clark.  See Sanders, 21 Cal.4th at

10  704-05.  Moreover, as the Court observed in Clark, whether departure from the timeliness rule is

11  warranted in any case is a question which is not subject to clear guidelines.  See id. at 763.

12          Because of the complexity of the timeliness analysis, and given that such

13  determinations are most often made in the context of post-card denials without the benefit of a

14  rationale, it is impossible to determine whether the procedural default is strictly or regularly

15  applied.  See Morales, 85 F.3d at 1392.  It is also impossible to determine whether judicial

16  discretion is exercised  ". . . according to standards that, at least over time, can become known

17  and understood within reasonable limits."  Id.  As the Ninth Circuit observed in Morales,

18  imposition of the timeliness default without any analysis renders it difficult to discern a

19  relationship between the denial and findings concerning timeliness.  See id.

20          The root of the problem, obviously, is the state court's use of post-card denials

21  imposing the timeliness bar without providing any reasons for doing so.  It seems that the state

22  would like to have it both ways by, on the one hand, summarily denying claims as untimely

23  without explanation and, on the other hand, arguing that this court should be able to somehow

24  overlook the lack of explanation in determining adequacy.  The few published California

25  Supreme Court cases addressing the timeliness default in capital cases do not illuminate the

26  reasoning behind the hundreds of cases where the timeliness default was imposed or not imposed

33

1   with no explanation at all.  And, just because the California Supreme Court has stated that it is

2   committed to consistent application of the rule does not mean that it has in fact done so.  Given

3   the use of post-card denials, it is impossible for this court to make a determination one way or the

4   other.  For all of the foregoing reasons, the court reaches the same conclusion the prior magistrate

5   judge reached in the original findings and recommendations – respondent has not shown that the

6   timeliness default is adequate.  No claims should be dismissed as barred by this default.

7       **C.**   **Waiver Default**

8           Under California law, a convicted defendant desiring to bring claims in a state

9   habeas petition must, if possible, have pursued the claims on direct appeal.  See Park v.

10  California, 202 F.3d 1146, 1151 (9th Cir. 2000) (citing In re Dixon, 41 Cal.2d 756 (1953)).  This

11  requirement has become known as the "Dixon rule."  See id.  Respondent argues that the

12  following claims are barred by the Dixon rule because petitioner did not raise them on direct

13  appeal:  Claims VI, VIII-A (all subparts), VIII-C5, and XVII (all parts).  In the original findings

14  and recommendations, the court concluded that the failure to raise any claim on direct appeal did

15  not bar federal review.  Specifically, the court stated:

16          Respondent . . . asserts some claims are procedurally defaulted
            because they were not presented in petitioner's opening brief on appeal.
17          See [In re] Dixon[, 41 Cal.2d 756 (1953)].  At least until August 3, 1998,
            when the California Supreme Court decided [In re] Robbins[, 19 Cal.4th
18          770 (1998)], the Dixon rule was neither an independent nor an adequate
            state law ground.  Park [v. California], 202 F.3d 1146 [(9th Cir. 2000)]
19          (Dixon rule not independent pre-Robbins); Fields v. Calderon, 125 F.3d
            757 (9th Cir. 1997) (Dixon rule unclear and inconsistently applied as late
20          as 1993).  This default occurred in 1994, when petitioner filed his opening
            brief on appeal.  Accordingly, none of petitioner's claims is barred because
21          not presented on direct appeal.

22          In opposition to respondent's motion to dismiss, petitioner argues that the Dixon

23  default is not adequate to bar federal habeas corpus review.  Specifically petitioner asserts:

24          At the outset, it should be noted that at least as a practical matter it
            is not possible to undertake the same sort of study of the court's practice
25          with regard to Dixon defaults as can be conducted with respect to
            [timeliness] defaults.

26

Potentially untimely . . . petitions can be identified from examining the court's docket.  Whether the [timeliness default was] imposed can be determined from examining the disposition.  Ascertaining whether a Dixon default could have been imposed, but has not been, is an entirely different matter.  Each claim in each petition must be reviewed and analyzed to determine whether it is based entirely on the trial record.  And, this would not be limited to the 94 cases identified above, but would necessarily include the far greater number of petitions filed during the pendency of the automatic appeal. . . .

Nonetheless, it strains credulity to suggest . . . that despite the overwhelming evidence that the California Supreme Court does not apply [the timeliness rule] evenhandedly, it applies Dixon [in] an altogether evenhanded manner.

In supplemental briefing addressing his burden under Bennett, petitioner argues:

It is well established that the Dixon rule was not clearly and regularly applied prior to In re Harris, 5 Cal.4th 813 (1993) (a companion case to Clark, decided the same day).  Fields v. Calderon, 125 F.3d 757, 762 (9th Cir. 1997).  Nothing changed concerning the California Supreme Court's application of the Dixon rule between 1993 and September 1994, when Mr. Jones' opening brief on appeal was filed.  So, even though no Ninth Circuit decisions assess the adequacy of the Dixon rule after 1993, the pre-1993 disarray serves to shift the burden of proof to Respondent with respect to the state of the law in September 1994.

Neither Harris nor Clark, the California Supreme Court's two 1993 decisions, announced any holding regarding Dixon.  Each dealt with state procedural rules other than the Dixon rule.  Clark . . .addressed the timeliness standards for habeas petitions, and specifically declined to "clarify and limit the exception to the rul[e] of . . . In re Dixon."  Clark, 5 Cal.4th at 769 n.8.  In Harris, the procedural rule at issue was the one announced in In re Waltreus, 62 Cal.2d 218, 225, cert. denied 382 U.S. 853 (1965), that issued raised and rejected on appeal cannot be renewed in a habeas petition.  The Harris opinion stated in a footnote that "[m]uch" of its "discussion also applies to the so-called 'Dixon rule.'"  5 Cal.4th at 825 n.3.  This dictum is most ambiguous, leaving unclear how "much" of which "discussion" the court intended to apply to Dixon.

Even assuming that the Harris footnote made the entirety of that opinion applicable to Dixon, nothing in Harris ensured that Dixon would be thereafter applied consistently, contrary to prior practice.  All Harris did, and all it purported to do, was "reexamine and reiterate the purpose of" the procedural rule and discuss at length the exceptions to that rule.  5 Cal.4th at 826, 829-41.  Harris did nothing to change or limit the inconsistent application of Dixon found by the Ninth Circuit.  The problems the Ninth Circuit found with the Dixon rule in Fields were not limited to or even focused on its exceptions.  125 F.3d at 764-65.  Mere reiteration of a procedural rule does not address the question of whether it will henceforth be regularly applied.  And since the adequacy of Dixon to bar federal review is ultimately a federal question, Harris and Clark cannot, in and of themselves, establish that Dixon is adequate.

1          The court finds that this is sufficient to meet petitioner's burden of putting the

2    adequacy of the Dixon default in issue.  See Bennett, 322 F.3d at 586.  Specifically, petitioner

3    has pointed to state court cases which he contends demonstrate that the Dixon default is not

4    consistently applied, and was not consistently applied when the default occurred in 1994.  The

5    court makes this finding even though, unlike petitioner's showing regarding the timeliness

6    default, petitioner has not alleged specific facts which suggest the Dixon default was not

7    adequate when it occurred in his case in 1994.  While Bennett refers to allegations of specific

8    facts which can put adequacy in issue, the court finds that this reference was made by way of

9    example only.  In Bennett, the Ninth Circuit stated:  "The petitioner may satisfy [his initial]

10   burden by asserting specific factual allegations that demonstrate inadequacy . . . ."  See 322 F.3d

11   at 586 (emphasis added).  Use of the word "may" indicates that this language is permissive not

12   mandatory.  The petitioner need not necessarily be the party to introduce specific evidence

13   regarding consistent application of state procedural defaults.  As the court stated in Bennett:

14              Although the burden of proving an affirmative defense is generally
         on the party asserting it, in this context, this placement is also the most
15       just.  It is the state, not the petitioner, often appearing pro se, who has at its
         hands the record and authorities to prove whether its court's have regularly
16       and consistently applied the procedural bar.

17       322 F.3d at 585.

18   Given the cases cited by petitioner, and the Ninth Circuit cases addressing the Dixon default,

19   there is a genuine question as to whether the default in this case, which occurred in 1994 – within

20   one year of the California Supreme Court's decision in Harris – was adequate at the time.

21          The conclusion that petitioner has met his initial burden is consistent with the

22   Ninth Circuit's burden-shifting analysis in King, 464 F.3d at 967.  As to the petitioner's initial

23   burden, the court stated:

24              . . . King asserts that the California Supreme Court's dismissal of
         his case demonstrates that it inconsistently applies the timeliness rule
25       because he properly justified his delay.  As the district court noted, this is
         not proof of inconsistent application, but simply rehashes the merits of his
26       arguments before the California Supreme Court.

1      King fails to explicitly raise the issue of whether the timeliness rule
is too uncertain to be well established.  The question then arises:  Is simply
2 contesting the adequacy of a state rule sufficient to meet the petitioner's
burden under <u>Bennett</u> if we have previously found the rule to be too
3 ambiguous to bar federal review. . . .

4      <u>Id.</u>

5 The court held that simply contesting adequacy is indeed enough, noting:

6      . . .Once we have found a state procedural rule to be inadequate,
petitioners may fulfill their burden under <u>Bennett</u> by simply challenging
7 the adequacy of the procedure; the burden then shifts back to the
government to demonstrate that the law has subsequently become
8 adequate.  Here, because we held in <u>Morales</u> that the California timeliness
rule was insufficiently clear, the government must show on remand that
9 the rule has since been clarified . . . and that the clarified rule has since
been consistently applied.
10
     <u>Id.</u>
11

12 The court further stated that the government should always bear the ultimate burden of proof

13 whether or not the petitioner identifies the correct basis upon which to challenge the adequacy of

14 the rule.  <u>See id.</u> at 967-68.  Otherwise, the court reasoned, a procedural default occurring during

15 the same time period could be found to be adequate in some cases and not in others.  <u>See id.</u> at

16 968.  The court concluded:  "A procedural rule is either adequate or inadequate during a given

17 time period; its adequacy does not depend upon the facts of a petitioner's case."  <u>Id.</u>  While the

18 court in <u>King</u> specifically addressed burden-shifting in the context of the timeliness rule, the

19 court finds that the Ninth Circuit's logic applies with no less force to challenges to the <u>Dixon</u>

20 default given the court's holdings in <u>Park</u> and <u>Fields</u>.  <u>See Webb</u>, 2008 WL 564965 (concluding

21 that the petitioner had not met even the de minimus <u>King</u> burden-shifting standard because he did

22 not say anything about the adequacy of the successive petition default).

23      Before addressing whether respondent has met his ultimate burden of proving the

24 adequacy of <u>Dixon</u> defaults occurring after 1993, the court must addresses whether the default

25 was independent for defaults imposed, as in this case, after 1998 when <u>Robbins</u> was decided.  In

26 his objections to the original findings and recommendations, respondent argues that, to the extent

1  the prior magistrate judge concluded that the Dixon default was not independent based on the

2  date the default occurred, this conclusion is incorrect because independence is measured at the

3  time the default is imposed, not when it occurs.  Given the reliance in the original findings and

4  recommendations solely on the date petitioner's opening brief was filed, the court agrees with

5  respondent on this point.  In this case, the Dixon default was imposed by the state court in 2003

6  when it denied petitioner's second habeas petition.  Therefore, reliance on the date the opening

7  brief on appeal was filed to determine independence was incorrect.

8         Here, the independence of the Dixon default is determined as of 2003, when it

9  was imposed.  While Park held that Dixon defaults imposed before Robbins was decided in 1998

10  were not independent, the question of the independence of Dixon defaults after 1998 has not

11  been directly answered by the Ninth Circuit.  See Protsman v. Pliler, 318 F. Supp. 2d 1004, 1007

12  (S.D. Cal. 2004) (citing Park, 202 F.3d at 1153).  Noting that the California Supreme Court in

13  Robbins stated that federal law will no longer be considered in applying state procedural defaults,

14  and that the Ninth Circuit in Bennett concluded this language was sufficient to render timeliness

15  defaults imposed after Robbins independent, the district court in Protsman concluded that the

16  same conclusion must also apply to Dixon defaults imposed after Robbins.  See id. at 1007-08.

17  Like petitioner's case, where the Dixon default was imposed in 2003, the Dixon default in

18  Protsman was imposed after the 1998 Robbins decision.  Based on this fact, the court concluded:

19              . . . Because [the Dixon default was imposed] after Robbins was
            issued, the California Supreme Court must have only looked to state law in
20            deciding that Petitioner's claim . . . was barred by Dixon.  The application
            of the Dixon bar in this case was not "interwoven with federal law" and
21            accordingly, the Court finds that the Dixon bar is independent.

22            Id. at 1008.

23  The court agrees that the logic of Bennett, which is based on Robbins, applies equally to Dixon

24  defaults as it does to timeliness defaults.  Because the Dixon default was imposed in this case

25  after Robbins was decided, it was independent.

26  / / /

1    Having concluded that the Dixon default was independent when imposed in this

2    case, the court turns to whether respondent has met his ultimate burden of establishing adequacy,

3    which is measured at the time the default occurs.  As the prior magistrate judge and respondent

4    both note, Dixon defaults occur when the opening brief on direct appeal was filed.  See Fields,

5    125 F.3d at 760-61.  In this case, petitioner's opening brief was filed in 1994.  Respondent

6    concedes that the Ninth Circuit has not addressed whether Dixon defaults occurring after Harris

7    was decided in 1993 are adequate.  See e.g. Bennett, 322 F.3d at 584 (recognizing that the issue

8    is unresolved with respect to the timeliness default); see also Wyrick v. Newland, 2007 WL

9    760529 (N.D. Cal. 2007).    However, respondent argues that, given the California Supreme

10   Court's articulation in Clark and Harris (both decided in 1993) of the state's default rules and

11   what is needed to overcome them, ". . . it is simply unreasonable to conclude that the California

12   Supreme Court would then fail to regularly apply [the Dixon default], and instead arbitrarily

13   impose its procedural defaults."  Based on this argument, respondent concludes that, because

14   Clark and Harris were decided in 1993, the Dixon default must have also been adequate at the

15   time it occurred in this case in 1994 when petitioner filed his opening brief on appeal.

16   It is clear that the basis of respondent's showing as to adequacy is that, because

17   Harris and Clark, which clarified the rules for consistent application of California procedural

18   defaults, were decided in 1993, the Dixon default in this case must have been consistently

19   applied when it occurred in 1994.  Respondent would have this court assume, based on this

20   timeline, that the Dixon default was adequate when it occurred because to do otherwise would be

21   "simply unreasonable."  Respondent does not support his conclusion that the California courts

22   consistently applied the Dixon rule after 1993 with references to any particular state court cases

23   showing consistent application.

24   / / /

25   / / /

26   / / /

1       The court finds that petitioner's argument concerning adequacy of the <u>Dixon</u>

2   represents the more likely scenario.  In particular, petitioner argues that the <u>Dixon</u> default cannot

3   bar federal habeas review because it remains to this day a discretionary procedural rule and, as

4   such, is not adequate.  As the Ninth Circuit noted in <u>Park</u>, the California Supreme Court in <u>Harris</u>

5   outlined several exceptions to application of the <u>Dixon</u> rule.  <u>See</u> <u>Park</u>, 202 F.3d at 1152.  These

6   exceptions are still part of the <u>Dixon</u> rule.   The <u>Dixon</u> rule is discretionary in that it admits of the

7   possibility of exceptions for "special circumstances constituting an excuse" for failure to raise a

8   claim by way of direct appeal and when such circumstances are found, the California Supreme

9   Court may entertain the claim.  <u>see</u> <u>Park</u>, 202 F.3d at 1152 (citing <u>Fields</u>, 125 F.3d at 763); <u>see</u>

10  <u>also</u> <u>Karis v. Vasquez</u>, 828 F. Supp. 1449, 1462-63 (E.D. Cal. 1993).  One of these exceptions to

11  the <u>Dixon</u> rule is for fundamental constitutional error.  <u>See</u> <u>Park</u>, 202 F.3d at 1152 (citing <u>In re</u>

12  <u>Harris</u>, 5 Cal. 4th 813 (1993)).  Other than disentangling this determination from federal law, the

13  California Supreme Court has not said anything since 1993 to render the <u>Dixon</u> rule any less

14  discretionary.  As the Ninth Circuit held in <u>Siripongs</u>, a discretionary state rule is not adequate to

15  bar federal habeas corpus review.  <u>See</u> 35 F.3d at 1318 (9th Cir. 1994).

16      The court simply cannot conclude that respondent's leap of logic, whereby this

17  court is asked to conclude that the <u>Dixon</u> default has been consistently applied since 1993

18  because it would be unreasonable to assume otherwise, satisfies his ultimate burden of proving

19  adequacy.   The court's reticence is supported by other district court cases addressing whether the

20  state has established adequacy for <u>Dixon</u> defaults occurring after 1993.  In <u>Vaughn v. Adams</u>, the

21  court concluded that the respondent had not met his burden under <u>Bennett</u> of establishing that the

22  <u>Dixon</u> bar was adequate for a default occurring in November 1997.  <u>See</u>  2006 WL 1439400.

23  The court noted that it is the actual practice of the state courts, not the results shown in a few

24  published opinions, which determines whether a procedural default is adequate.  <u>See</u> <u>id.</u> at *6

25  (citing <u>Ford v. Georgia</u>, 498 U.S. 411, 423-34 (1991)).   In this case, respondent has not

26  demonstrated the actual practice of the state court's in applying the <u>Dixon</u> default.  As noted

1  above, he asks this court to assume an actual practice without actually proving it.  In any event,

2  given the state court's reliance on post-card denials, it is doubtful that respondent could prove

3  anything concerning application of the Dixon default.

4          In Wyrick,, the court discussed the adequacy of post-1993 Dixon defaults.  See

5  2007 WL 760529.  The court began by noting that the Dixon rule was not consistently applied

6  before or shortly after the 1993 Harris decision.  See id. at *5 (citing Fields, 125 F.3d at 765).

7  The court also noted the 1998 Robbins decision, in which the California Supreme Court stated

8  that "it would thenceforth consistently apply" California procedural rules, but observed that, just

9  because the state court said it would consistently apply its rules does not mean that it in fact did

10  so.  See id. (citing Bennett, 322 F.3d at 583).  The court concluded that the respondent had failed

11  to meet its burden of establishing adequacy.  See id. at *6.  Specifically, the court held that

12  respondent failed to meet his burden because he relied solely on Bennett, which addressed the

13  timeliness default and not the Dixon default.  See id.  As in Wyrick, respondent in this case

14  relies solely on a leap of faith based on Bennett and does not actually prove consistent

15  application of the Dixon rule.

16          The court is aware of at least four cases in which the district court has concluded

17  that the Dixon default was adequate after 1993.  However, each of these cases is distinguishable

18  in that the respondent was found to have met his ultimate burden only because the petitioners

19  failed to meet their initial burden of putting the procedural bar in issue.  In particular, the parties

20  discuss Protsman v. Pliler.  In that case, however, adequacy was not found based on the

21  respondent's showing, but on the petitioner's lack of showing.  See 318 F. Supp. 2d at 1008-09.

22          Recent cases decided in this district also found adequacy based only on the lack of

23  showing by the petitioners.  In Ngoun v. Adams, 2006 WL 707406 (E.D. Cal. 2006), the court

24  concluded that the Dixon default was adequate when it occurred in 1999 because the petitioner

25  failed to meet his initial burden.  See id. at *11.  In Bridges v. Runnels, 2007 WL 2695177 (E.D.

26  Cal. 2007), the court considered a Dixon default which occurred after the 1993 Harris decision

1  was issued and concluded that it was adequate at the time only because the petitioner had not met

2  his initial burden under Bennett.  See id. at *7.  The court concluded:

3                    . . . In his reply, petitioner makes no argument nor produced any
          evidence to prove that the Dixon rule was applied inconsistently in 2000.

4          Therefore, the petitioner has not carried his burden.

5          Id.

6  In Johnson v. Giurbino, 2007 WL 2481789 (E.D. Cal. 2007), the court considered a Dixon

7  default occurring in November 2000 and noted that the adequacy determination involves at least

8  two separate and distinct components – whether the default is well established and whether the

9  default is consistently applied.  See id. at *9-10.  The court concluded that the Dixon default was

10  well established after the Harris and Clark decisions in 1993.  See id. at *8 (citing Park, 202 F.3d

11  at 1151-42).  As to whether the Dixon default is consistently applied, the court concluded that it

12  was, but only because petitioner had not met his initial burden under Bennett.  See id. at *10.

13          Having carefully considered all the arguments raised by the parties, the court finds

14  that this case is similar to Vaughn and Wyrick in that respondent has not proved the adequacy of

15  Dixon defaults occurring in this case.  Therefore, no claims should be dismissed as barred by the

16  Dixon default.

17      **D.    Successive Petition Default**

18          The California Supreme Court has stated that it is the policy of the state courts to

19  "deny an application for habeas corpus which is based upon grounds urged in a prior petition

20  which has been denied, where there is shown no change in the facts or the law substantially

21  affecting the rights of the petitioner."  Clark, 5 Cal.4th at 769.  This rule is commonly known as

22  the piecemeal litigation or successive petition default.  Respondent argues that the following

23  claims are barred because petitioner raised them in successive state court petitions:  Claims III,

24  V-A (all subparts), V-B, VI, VII, VIII-A (all subparts), VIII-C5, and XVII (all parts).  Petitioner

25  argues that the successive petition default was not adequate when it occurred in this case.  The

26  parties' arguments are essentially the same as those discussed above.

                                        42

1          In the original findings and recommendations, the prior magistrate judge

2   addressed the successive petition default as follows:

3              Respondent asserts some claims are procedurally defaulted because
        petitioner violated California's rule against piecemeal litigation of claims,
4       viz., "successive" petitions.  The alleged default occurred December 6,
        1995, when petitioner filed his first state habeas petition and did not
5       include all of this claims.  California's piecemeal litigation rule was not
        "independent" of federal law until the state supreme Court decided In re
6       Robbins in 1998.  See Bennett.

7   Based on this finding, the prior magistrate judge concluded that no claims were barred by the

8   successive petition default.  In his objections to the original findings and recommendations,

9   respondent states:

10             Respondent disagrees.  As with the other two procedural defaults
        discussed, the California Supreme Court's application of the successive
11      petition rule has been done so independent of federal law since at least the
        1998 decision in In re Robbins, 18 Cal.4th 770; cf. Bennett v. Mueller,
12      322 F.3d at 582-583.  And as stated above, the independence of a state's
        procedural default is measured at the time the default is imposed.  Bennett
13      v. Mueller, 322 F.3d at 582.  In this case the default was imposed in
        September 2003.  Consequently, as applied, the successive petition default
14      imposed by the state high court was done so independently of federal
        constitutional law.  Therefore, the magistrate's rejection of the state's
15      successive petition defense on this ground was in error.  Respondent has
        set forth its arguments on the adequacy of this bar fully in its motion and
16      response to Petitioner's opposition. . . .

17  In supplemental briefing, petitioner repeats the arguments raised with respect to the timeliness

18  and Dixon defaults.  Specifically, he states:

19             It is Petitioner's position that neither Clark nor Robbins, nor any
        other case has done anything to rectify the facial inadequacy of the habeas
20      policies' failure to provide any reasonably objective guidelines governing
        delayed and/or successive petitions. . . .

21

22         Without repeating the court's analysis set forth above, the court finds for the same

23  reasons that petitioner has met his burden under Bennett of putting the successive petition bar in

24  issue.  See King, 464 F.3d at 967; see also See Webb, 2008 WL 564965.  Similarly, and for the

25  reasons discussed above, the court agrees with respondent that the prior magistrate judge erred in

26  his independence analysis by not basing it on the date the successive petition default was

1   imposed – 2003 – and that, as of this date, the successive petition default was indeed

2   independent.   See Bennett, 322 F.3d at 582-83.  Therefore, as with the timeliness and Dixon

3   defaults, the only issue is whether respondent has met his ultimate burden of proving that the

4   successive petition default was adequate at the time it occurred in this case in 1995 when

5   petitioner filed his first state habeas petition but did not include all claims.  Again, this issue

6   involves defaults imposed after Harris and Clark were decided in 1993.

7           In Robbins, the California Supreme Court explained that "Clark serves to notify

8   habeas corpus litigants that we shall apply the successiveness rule when we are faced with a

9   petitioner whose prior petition was filed after the date of finality of Clark."  See Robbins, 18

10  Cal.4th at 788 n.9.  Thus, according to the California Supreme Court, Clark put habeas

11  petitioners in California on notice that the successiveness bar would be consistently applied.

12  Therefore, the successive petition default is well-established in California, at least since Clark

13  was decided in 1993.  See Siripongs, 35 F.3d at 1318.

14          Like the timeliness and Dixon defaults, however, whether the successive petition

15  default is consistently applied is a different question.  A well-established procedural rule may not

16  be consistently applied.  Based on the same concerns surrounding the timeliness and Dixon

17  defaults, this court concludes that respondent has not (and likely cannot) met his ultimate burden

18  of proving that the successive petition default was in fact consistently applied at the time the

19  default occurred in this case.  The court in Dennis v. Brown, which is discussed above in the

20  context of the timeliness default, also addressed its adequacy analysis to the successive petition

21  default.  See 361 F. Supp. 2d at 1132-35.  The court in Dennis concluded that, given the

22  problems attendant with post-card denials, the respondent did not meet his burden of proving

23  adequacy.  Respondent has not met his burden of proving that this problem does not also

24  undermine the adequacy of the successive petition default.  See Ayala v. Ayers, 2007 WL

25  2853934 (concluding that a successive petition default occurring in 1998 was not adequate

26  because the respondent did not meet his ultimate burden of proof).

1          While this court is mindful of a number of fairly recent cases in which courts have

2    concluded that the successive petition default was adequate to bar federal habeas review, each is

3    distinguishable.   In Biggs v. Ylst, 2006 WL 3001175 (E.D. Cal. 2006), the court considered a

4    successive petition default which occurred and was imposed in 2004 and concluded that it was

5    independent at that time.  See id. at *2.  The court also concluded that it was adequate, but only

6    because the petitioner had not made any argument sufficient to meet his initial burden under

7    Bennett.  See id.  Similarly, in Austin v. Tilton, 2008 WL 595952 (S.D. Cal., March 3, 2008), the

8    court concluded that a post-Harris successive petition default was adequate, but only because

9    petitioner failed to put the defense in issue.  See id. at *32.  In Webb, 2008 WL 564965, the court

10   concluded that the successive petition default was adequate when it occurred in 2005 because

11   petitioner had not met his minimal initial burden under Bennett and King.  See id. at *6.  These

12   cases did not find that the default was adequate based on any proof offered by the respondent.

13          In Monger v. Woodford, 2008 WL 486003 (E.D. Cal., Feb. 19, 2008), the court

14   considered a successive petition default which occurred when the petitioner's first state habeas

15   petition was filed in 2001.  See id. at *1.  Without any analysis concerning the parties' burdens

16   under Bennett or how respondent had proved adequacy, the court nonetheless concluded that the

17   default was adequate to support the denial of claims.  See id. at *2.  Given the lack of analysis,

18   this case is also distinguishable and not persuasive.  Likewise, in Baabbad v. Galaza, 2006 WL

19   845758 (E.D. Cal. 2006), the court concluded that the successive petition default was adequate

20   when it occurred in 2002.  See id. at *8.  The court, however, did not engage in any burden-

21   shifting analysis or discuss whether the respondent had proved adequacy.  The court stated:

22           . . . The court finds that at the time of Petitioner's 2002 default in
not bringing his habeas corpus claim in his first habeas corpus petition in

23       the California Supreme Court, ten years had passed since the state habeas
diligence standards were set forth in Clark.  Thus, the court finds that these

24       standards were well-established and consistently applied, and the state
procedural bar was adequate to support the judgment.

25       Id.

26

As in <u>Monger</u>, this conclusion is not based on any burden-shifting analysis or discussion of proof of adequacy offered by the respondent.  As such, it is also distinguishable and not particularly persuasive.  Moreover, even if this court were to accept that the mere passage of time since <u>Clark</u> and <u>Harris</u> were decided necessarily indicates consistent application – which it does not – the default in the instant case occurred in 1995, just two years after <u>Clark</u> and <u>Harris</u>.  Therefore, there was not a significant passage of time and, for this additional reason, <u>Baabbad</u> is further distinguishable.

The court is simply not aware of any cases which have examined proof provided by the government and reached the conclusion that the successive petition default has been consistently applied after 1993.  For the reasons discussed throughout these amended findings and recommendations, the court finds that respondent has not demonstrated consistent application of the successive petition default after 1993.  Therefore, no claims should be dismissed as barred by the successive petition default.

## IV.  CONCLUSION

The following summarizes the court's findings and recommendations:

1.    Because the parties only objected to the original findings and recommendations with respect to the applicability of various procedural defaults to bar claims, the court finds that dismissal of Claims III and XIX is appropriate for the reasons stated herein and in the original findings and recommendations;

2.    The contemporaneous objection default does not bar any claims;

3.    The timeliness default does not bar any claims;

4.    The <u>Dixon</u> default does not bar any claims;

5.    The successive petition default does not bar any claims; and

6.    Because no procedural defaults operate to bar claims in this case, it is not necessary to address exceptions for cause and prejudice or fundamental miscarriage of justice.

///

1          Based on the foregoing, the undersigned recommends that:

2          1.      Respondent's motion to dismiss (Doc. 68) be granted in part and denied in

3   part;

4          2.      Respondent's motion be granted as to Claim III, which should be

5   dismissed for failure to state a claim, except to the extent petitioner alleges ineffective assistance

6   of counsel with respect to a competent expert;

7          3.      Respondent's motion be granted as to Claim XIX, which should be

8   dismissed as premature; and

9          4.      Respondent's motion be denied in all other respects.

10         These amended findings and recommendations are submitted to the United States

11  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

12  30 days after being served with these findings and recommendations, any party may file written

13  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

14  Findings and Recommendations."  Failure to file objections within the specified time may waive

15  the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16

17   DATED:  March 31, 2008

18                                    _____

19                                    **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26