KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
RYAN B. MCCARROLL, State Bar No. 214853
Deputy Attorney General
CARLOS A. MARTINEZ, State Bar No. 127950
Supervising Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 324-5274
 Fax:  (916) 324-2960
 E-mail:  Carlos.Martinez@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFFREY GERARD JONES,** | CIV S-97-2167 MCE CMK |
| Petitioner, | **CAPITAL CASE** |
| v. | **RESPONSE TO OBJECTIONS TO FINDINGS AND RECOMMENDATIONS** |
| **RON DAVIS, Warden,** | |
| Respondent. | |

The magistrate judge correctly recommended that Petitioner's second motion for stay and abeyance be denied.[1] Under *Rhines v. Weber*, 544 U.S. 269 (2005), Petitioner fails to show good cause, and alternatively, under *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002), abrogated on other grounds by *Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007), a discretionary stay is inappropriate. Specifically, with respect to Petitioner's Claim A (the so-called prosecutor's use of "false evidence" claim), Petitioner fails to show diligence because he inexplicably waited decades to contact Dr. Arthur Lamb and present him with materials the doctor used to recant his 1983

---

[1] More than fourteen years ago, Petitioner's first motion for stay and abeyance was granted.  (ECF No. 51.)

opinion that Petitioner was malingering.  With respect to Claim B (the *Batson*[2] claim), Petitioner fails to explain what, if anything, he did to try to establish good cause to obtain the prosecutor's notes or to attempt to obtain them through formal discovery and a court order.  This Court should adopt the magistrate judge's Findings and Recommendations.

### A.  Claim A

In Claim A, Petitioner complains the prosecutor relied on "false evidence and arguments" because Dr. Lamb, one of two doctors who found Petitioner was malingering, changed his mind in 2015, thus supposedly also rendering Petitioner "innocent of capital murder." (ECF No. 127, at 5-28.)  But, as the magistrate judge found, "Petitioner has not explained why, despite his long-standing mental problems, he did not contact Dr. Lamb prior to 2012." (ECF No. 138, at 3.)

Petitioner would have this Court believe he was barred from seeking Dr. Lamb's declaration until the state legislature in 2014 amended California Penal Code section 1473 with Senate Bill 1058.  (ECF No. 143, at 2-5.)  But ever since the state legislature first amended section 1473 in 1975, section 1473(b), using broad language, has allowed a writ of habeas corpus to be "prosecuted for, but not limited to, the following reasons: (1) False evidence that is substantially material or probative on the issue of guilt or punishment was introduced against a person at any hearing or trial relating to his incarceration . . . ." Cal. Penal Code § 1473(b)(1). The California Supreme Court explained, "False evidence is 'substantially material or probative' if it is 'of such significance that it may have affected the outcome,' in the sense that 'with reasonable probability it could have affected the outcome . . . .' [Citation.]  In other words, false evidence passes the indicated threshold if there is a 'reasonable probability' that, had it not been introduced, the result would have been different." *In re Sassounian*, 9 Cal. 4th 535, 546 (1995); *see also In re Malone*, 12 Cal. 4th 935, 965-66 (1996).  The 1975 amendment also added subdivision (d), which provides, "Nothing in this section shall be construed as limiting the grounds for which a writ of habeas corpus may be prosecuted or as precluding the use of any other remedies." Cal. Penal Code § 1473(d).

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

On December 3, 2012, the state supreme court filed its opinion in *In re Richards*, 55 Cal. 4th 948, 965-67 (2012), which found for the first time that expert testimony is merely the opinion of the expert, not evidence in and of itself, and so can never be true or false. In response, the state legislature passed Senate Bill 1058. *See* 2014 Cal. Stat. ch. 623 § 1. The bill added section 1473(e)(1), which provides, "For purposes of this section, 'false evidence' shall include opinions of experts that have either been repudiated by the expert who originally provided the opinion at a hearing or trial or that have been undermined by later scientific research or technological advances." *See People v. Johnson*, 235 Cal. App. 4th 80, 88 (2015). Thus, until the California Supreme Court decided *Richards* very late in 2012, nothing should have dissuaded Petitioner from contacting Dr. Lamb. As the magistrate judge explained, "even though California law only recently changed to explicitly recognize a repudiated expert opinion as 'false evidence' warranting relief under California Penal Code § 1473, petitioner could have nonetheless contacted Dr. Lamb much sooner to discuss his opinion. Section 1473 was amended in 1975 to allow relief based on false evidence and, until the California Supreme Court's decision in *In re Richards*, . . ., holding that expert opinion is not evidence in and itself subject to § 1473, petitioner could have contacted Dr. Lamb." (ECF No. 138, at 3, footnote omitted.)

Nevertheless, Petitioner maintains that Dr. Lamb's declaration is "only a small portion" of Petitioner's showing that takes advantage of the state's new statute. A review of Claim A, however, confirms the doctor's declaration is quite central to the claim. (*See* ECF 127, at 6-13.)

Petitioner also contends that, had he raised Claim A earlier, the California Supreme Court would have denied it for the reasons employed in *Richards*. (ECF No. 143, at 5.) Petitioner misses the point. He must act with diligence whether or not he surmises that the state supreme court will view his claim favorably. The stay and abeyance procedure is available only in limited circumstances because of the Antiterrorism and Effective Death Penalty Act's twin objectives of encouraging petitioners to first seek relief from state courts and reducing delays in the execution of criminal sentences. *Rhines*, 544 U.S. at 277-78. There is no provision allowing a petitioner to hold his claim in reserve until the moment he thinks the state supreme court will rule in his favor.

In any event, for the reasons addressed in Respondent's opposition to Petitioner's motion, the California Supreme Court would undoubtedly impose two adequate and independent state procedural bars. (*See* ECF No. 129, at 7-8.) And the claim defies all logic and reason in that Petitioner fails to explain how a prosecutor could commit misconduct during the 1988 trial because one of two doctors who found Petitioner was malingering changed his mind in 2015. As the California Supreme Court recognized long ago, the prosecutor in this case "made fair comments upon the evidence presented." *People v. Jones*, 15 Cal. 4th 119, 186 (1997).

**B.     Claim B**

In Claim B, Petitioner relies on his discovery in 2008 of the trial prosecutor's notes, which Petitioner asserts show jurors were excluded on the basis of race. (ECF No. 127, at 37-38.) In his objections, Petitioner explains that his present counsel discovered these notes while Petitioner was incompetent. (ECF No. 143, at 5.) He argues, "Counsel wanted, and believed that they were entitled to, petitioner's assistance in proceeding with further litigation on his behalf and his federal habeas proceedings remain stayed based on his incompetence." (ECF No. 143, at 6.)

But Petitioner offers no explanation as to how his restored mental competence could meaningfully assist his present attorneys in setting forth their jury-selection claim. And a review of the California State Bar website confirms that his trial attorneys, Jessie Morris, Jr. (Cal. Bar No. 84440) and Jerry Lee Chong (Cal. Bar No. 68757), are both still active members of the bar, practice in Sacramento, and thus could have been easily contacted to discuss any matters that occurred during voir dire. http://www.calbar.ca.gov. And the exhibits Petitioner submits only show that in 2000, his present attorneys engaged in a "voluntary exchange of documents" with a deputy attorney general who denied, for lack of good cause, a request for the prosecutor's notes, but left open the possibility of reconsideration if Petitioner's counsel submitted additional evidence. (ECF No. 125-2, at 4, 11.) Thereafter, Petitioner's counsel did nothing on the *Batson* issue for about eight years until 2008 when one of them simply wrote a short letter to the Sacramento County District Attorney's Office and obtained the prosecutor's notes. (ECF No. 125-2, at 4, 14-15.) Following this, counsel again inexplicably waited nearly seven more years before planning to raise the matter in the state court. Thus, Petitioner fails to set forth a

reasonable excuse, supported by sufficient evidence, to justify his failure to exhaust Claim B in the state court. *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014); *Norgueda v. California*, No. 2:14-cv-1045 GGH P, 2014 WL 5473548, at *2 (E.D. Cal. Oct. 23, 2014) (petitioner not entitled to stay and abeyance where he waited over two and a half years to present the claims of which he was already aware).

In any event, as discussed in Respondent's opposition to Petitioner's motion, stay and abeyance procedures for this claim are futile. (*See* ECF No. 129, at 8-10.)

**C.   Claim C**

In Claim C, Petitioner relies on (*Ernest*) *Jones v. Chappell*, 31 F.Supp.3d 1050 (C.D. Cal. 2014) to argue that "delays in the implementation of California capital punishment violate the Eighth Amendment." (ECF No. 127, at 41-46.) But Petitioner offers no specific objection to the magistrate judge's findings. (ECF No. 138, at 4; ECF No. 143, at 2, 10.) Rather, in a footnote, he asserts that for the reasons stated in his motion and reply, he acted with due diligence and the claim relates back to the claims contained in his Second Amended Petition. (ECF No. 143, at 2 n.2.) He then adds, "However, upon reflection, petitioner acknowledges that under Supreme Court law as it currently stands, if petitioner amended his petition to assert Claim C following exhaustion, the claim would not satisfy the requirements of 28 U.S.C. § 2254(d) . . . ." (ECF No. 143, at 2 n.2.)

As the magistrate judge correctly determined, Claim C is not cognizable on federal habeas review because "[f]ederal habeas relief is available only based on the state court's misapplication of rules clearly announced by the United States Supreme Court" while the decision in *Ernest Jones* is not based on such clearly established precedent. (ECF No. 138, at 4; *see* 28 U.S.C. § 2254(d).) Indeed, as the Ninth Circuit recently explained, "no clearly established Supreme Court precedent holds that inordinate delay in the execution of a capital defendant constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Andrews v. Davis*, 798 F.3d 759, 790 (9th Cir. 2015); *see also People v. Seumanu*, 61 Cal. 4th 1293, 1368-75 (2015). Moreover, as the magistrate judge found, "petitioner has not been diligent in presenting this claim" which "was apparent long before the Central District's decision." (ECF No. 138, at 4.) And for the

5

reasons addressed in Respondent's opposition to the motion, Claim C does not relate back to any claim in the Second Amended Petition.  (*See* ECF No. 129, at 10-11.)

## CONCLUSION

For the foregoing reasons, this Court should adopt the magistrate judge's Findings and Recommendations.

Dated:  October 27, 2015

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
RYAN B. MCCARROLL
Deputy Attorney General

/s/ *Carlos A. Martinez*

CARLOS A. MARTINEZ
Supervising Deputy Attorney General
*Attorneys for Respondent*

CAM:sra
SA1997XW0009
32256954.doc